United States Court of Appeals,

Eleventh Circuit.

No. 96-9069.

Graham L. COLE, Plaintiff-Counter-Defendant-Appellee,

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, A.S.C.S., Defendants-Counter-Claimants-Appellants.

Jan. 21, 1998.

Appeal from the United States District Court for the Middle District of Georgia. (No. 6:91-CV-4), J. Robert Elliott, Judge.

Before ANDERSON and BLACK, Circuit Judges, and MOORE[*], Senior District Judge.

PER CURIAM:

Defendants-Appellants United States Department of Agriculture and Agricultural Stabilization and Conservation Service ("USDA") appeal from a grant of summary judgment. The district court granted Plaintiff-Appellee Graham L. Cole summary judgment on his claims that a civil penalty assessed against him violates both the Double Jeopardy Clause and the Excessive Fines Clause.

I. Facts and Procedural History

Cole is a tobacco dealer. He instituted this action to challenge an administrative penalty for marketing tobacco in excess of marketing quotas established by the Secretary of Agriculture. Between 1985 and 1987-88, Cole sold 315,612 more pounds of tobacco than he reported purchasing. Cole was prosecuted and acquitted of criminal charges in connection with this discrepancy,

---

[*]Honorable John H. Moore, II, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

including conspiracy to defraud the government, fraud, and mail fraud. After he was acquitted of the criminal charges, the USDA assessed civil penalties of almost $400,000 against Cole pursuant to 7 U.S.C. § 1314(a), which imposes a penalty of 75% on the marketing of tobacco in excess of a farm's marketing quota.

The district court found that this assessment violated both the Double Jeopardy Clause and the Excessive Fines Clause of the United States Constitution and granted summary judgment for Cole on both issues. We reverse. We discuss first the Double Jeopardy issue and then the Excessive Fines issue.

## II. Standard of Review

This Court applies a *de novo* standard of review to a district court's grant of summary judgment. *See, e.g., Scala v. City of Winter Park,* 116 F.3d 1396, 1398 (11th Cir.1997).

## III. Discussion

A. *Double Jeopardy Claim*

The Double Jeopardy Clause provides that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., amend. V. It "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). Cole alleges the first type of violation. He argues that he has already been acquitted of criminal charges in connection with marketing over-quota tobacco and the civil penalties are a second attempt at punishment for the same conduct.[1] We disagree.

---

[1] The USDA contends that the conduct on which the criminal charges were based is different than the conduct on which the civil over-quota marketing penalties are based. As this is only an alternative argument, we do not need to decide this issue.

There are two relevant questions to determine whether a civil penalty imposed after acquittal in a criminal proceeding implicates the Double Jeopardy Clause. The first is whether the second sanction (the civil penalty) deals with the same offense. The second question is whether the second sanction is in fact a punishment. If the answer to either of these questions is negative, the penalty does not violate the Double Jeopardy Clause.

*1. Does the civil penalty constitute a second prosecution for the same offense after acquittal?*

The Double Jeopardy Clause is violated only if the defendant is put in jeopardy twice for the same offense. Under the "same elements" test, two offenses are different for the purposes of double jeopardy analysis if each "requires proof of an additional fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). *See also United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 2855-56, 125 L.Ed.2d 556 (1993). Here, the criminal offenses and the civil offense clearly require proof of different elements. In the criminal case, Cole was charged with conspiracy to defraud the government, fraud, and mail fraud. Each of these crimes requires proof of intent and misrepresentation. 18 U.S.C. §§ 371, 1001, 1341. In this civil proceeding, the USDA has assessed an over-quota marketing penalty against Cole, which requires the USDA to prove that Cole failed to remit a penalty to the government. 7 U.S.C. § 1314(a). The criminal action requires proof of intent, an element not required to prove the civil offense. The civil suit requires proof of the failure to remit the penalty, an element not required for the criminal offense. Because the criminal and civil offenses each require proof of an element which the other does not, the over-quota marketing penalty is not a second prosecution for the same offense. Therefore, it does not violate the Double Jeopardy Clause.

*2. Is the civil penalty a "punishment"?*

Even if the underlying elements of both offenses were the same, the government would not

be precluded from pursuing both criminal and civil remedies against Cole: "That acquittal on a criminal charge is not a bar to a civil action by the Government, remedial in its nature, arising out of the same facts on which the criminal proceeding was based has long been settled." *Helvering v. Mitchell,* 303 U.S. 391, 397, 58 S.Ct. 630, 632, 82 L.Ed. 917 (1938).

The Supreme Court has recently clarified[2] the test for determining whether a particular sanction is criminal or civil for the purposes of double jeopardy analysis:

> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. *Helvering, supra*, at 399 [, 58 S.Ct. at 633]. A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." *Ward*, 448 U.S., at 248 [, 100 S.Ct. at 2641]. Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," *id.* at 248-49 [, 100 S.Ct. at 2641], as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty," *Rex Trailer Co. v. United States*, 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956).
>
> In making this latter determination, the factors listed in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169, 83 S.Ct. 554, 567-68, 9 L.Ed.2d 644 (1963), provide useful guideposts, including: (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." It is important to note, however, that "these factors must be considered in relation to the statute on its face," *id.* at 169 [, 83 S.Ct. at 568], and "only the clearest proof" will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty, *Ward, supra,* at 249 [, 100 S.Ct. at 2641] (internal quotation marks omitted).

*Hudson v. United States,* --- U.S. ----, ----, 118 S.Ct. 488, 493, --- L.Ed.2d ---- (1997). Applying this test to the facts of this case, it is clear that the penalty assessed against Cole does not violate the Double Jeopardy Clause. It is evident that Congress intended the penalty for violations of 7 U.S.C.

---

[2]*Hudson v. United States,* --- U.S. ----, 118 S.Ct. 488, 491, --- L.Ed.2d ---- (1997), "in large part disavow[s] the method of analysis used in *United States v. Halper.*"

§ 1314(a) to be civil in nature. The authority to issue and collect over-quota marketing penalties is conferred upon the Secretary of the Department of Agriculture. 7 U.S.C. § 1314(b). "That such authority was conferred upon administrative agencies is prima facie evidence that Congress intended to provide for a civil sanction." *Hudson,* --- U.S. at ----, 118 S.Ct. at 495 (citations omitted). Furthermore, the Supreme Court has interpreted the regulatory scheme as "giv[ing] the United States a *civil action* for the recovery of unpaid penalties." *Mulford v. Smith,* 307 U.S. 38, 45, 59 S.Ct. 648, 651, 83 L.Ed. 1092 (1939) (referring to "proceedings" authorized by 7 U.S.C. § 1376) (emphasis added).

Having determined that Congress intended for the over-quota marketing penalty to be civil, we turn to the second part of the test, whether it is "so punitive in form and effect as to render them criminal despite Congress's intent to the contrary." *United States v. Ursery,* --- U.S. ----, ----, 116 S.Ct. 2135, 2138, 135 L.Ed.2d 549 (1996). We examine the *Kennedy* factors. First, the penalty does not involve an "affirmative restraint," such as imprisonment. Second, the Supreme Court has determined that money penalties have not historically been viewed as punishment: "[T]he payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as enforceable by civil proceedings since the original revenue law of 1789." *Hudson,* --- U.S. at ----, 118 S.Ct. at 495 (quoting *Helvering,* 303 U.S. at 400, 58 S.Ct. at 633). Third, the penalties do not require a finding of scienter; they are imposed whenever a producer oversells his quota, regardless of his state of mind. With respect to the fifth *Kennedy* factor, the behavior which triggers the penalty, overselling a tobacco quota, is not a crime.

While the penalty does promote a traditional goal of punishment—i.e. deterrence—the Supreme Court has recognized that all civil penalties will have some deterrent effect. *See Hudson,* --- U.S. at ----, 118 S.Ct. at 493. This does not necessarily render them criminal punishments since

"deterrence "may serve civil as well as criminal goals.' " *Hudson,* --- U.S. at ----, 118 S.Ct. at 496 (quoting *Ursery,* --- U.S. at ----, 116 S.Ct. at 2149). For example, the over-quota marketing penalty is intended to deter producers from exceeding their quotas, but the legislative purpose of discouraging the sale of over-quota tobacco is merely a regulatory goal, not a criminal goal. Moreover, the penalty serves more generally to promote the stability of the tobacco price supports and fund the government's enforcement efforts. With respect to *Kennedy* 's sixth factor, the penalty is rationally related to an alternative, nonpunitive purpose. Finally, with respect to *Kennedy* 's seventh factor, the penalty is not excessive in relation to this alternative purpose.[3]

All of the *Kennedy* factors described in *Hudson,* excepting perhaps the deterrence factor, point against a finding that the penalty is so punitive[4] as to transform it into a criminal penalty. Appellant's arguments certainly do not rise to the level of the "clearest proof" required by *United States v. Ward,* 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), to override the legislative intent to create a civil penalty. *See Hudson,* --- U.S. at ----, 118 S.Ct. at 493 (quoting *Ward,* 448 U.S. at 249, 100 S.Ct. at 2641). Applying the *Hudson* test, we readily conclude that invoking this

---

[3]As discussed below, the purpose of the statute is to control and discourage the introduction of over-quota tobacco into the market. Given this legitimate governmental purpose, it is not excessive to impose a penalty of less than 100% of the value of the over-quota tobacco which is introduced into the market.

[4]Cole suggests that the penalty is punitive in his case because he claims that he never purchased or sold over-quota tobacco. There are two flaws in Cole's argument. First, the Double Jeopardy inquiry focuses on the statute *on its face,* not on the facts of Cole's particular case. *See Hudson,* --- U.S. at ----, 118 S.Ct. at 494 (clarifying that the appropriate analysis focuses on the "statute on its face"). Second, Cole's factual claim that he never purchased or sold over-quota tobacco overlooks the posture of this case. The previous appeal in this case established that at the summary judgment stage, the USDA's proof that dealer Cole sold more tobacco than he reported buying triggered the rebuttable presumption that he purchased over-quota tobacco from a producer. In the previous appeal, Cole challenged that regulatory presumption and lost. *Cole v. U.S. Dep't of Agric.,* 33 F.3d 1263 (11th Cir.1994). Thus, at this stage in the proceedings, we must assume that the USDA can prove, with the help of the presumption in the regulations, that Cole purchased over-quota tobacco from a producer.

penalty after Cole was acquitted of criminal charges does not violate the Double Jeopardy Clause.

B. *Excessive Fines Claim*

The Supreme Court has not articulated a comprehensive test to determine whether an *in personam* civil penalty violates the Excessive Fines Clause of the Eighth Amendment. In *Austin v. United States,* which dealt with *in rem* civil forfeitures and the Excessive Fines Clause, the Court declined to set forth standards of "excessiveness." 509 U.S. 602, 622, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993). Although the Court has not defined the outer limits of acceptable fines, *Austin* did articulate a bright line rule in one category of cases: "[A] fine that serves purely remedial purposes cannot be considered "excessive' in any event." *Id.* at 621 n. 14, 113 S.Ct. at 2812 n. 14.

In this case, from the perspective of a tobacco dealer like Cole, the 75 percent penalty is purely remedial, and thus is not excessive. A review of the statutory penalty and how it operates with respect to dealers will demonstrate that the penalty is strictly remedial when viewed from Cole's perspective as a dealer. The statute provides:

> The marketing of ... any kind of tobacco in excess of the marketing quota for the farm on which the tobacco is produced ... shall be subject to a penalty of 75 per centum of the average market price ... for such kind of tobacco for the immediately preceding marketing year. *Such penalty shall be paid by the person who acquired such tobacco from the producer but an amount equivalent to the penalty may be deducted by the buyer from the price paid to the producer. ...*

7 U.S.C. § 1314(a) (emphasis added). It is apparent from the statute that Congress intended the penalty to be imposed ultimately upon a producer who sells more tobacco than the producer's marketing quota (over-quota tobacco). Under the statute, a dealer who purchases over-quota tobacco is required to pay the penalty, but then may deduct that amount from the purchase price paid to the producer. Thus, the statute requires the dealer to assume the role of "collector," much like a retailer in the context of a common sales tax. When a dealer purchases over-quota tobacco, the statute requires the dealer to remit the penalty to the government, but the statute also authorizes the dealer

to withhold the same amount from its payment of the purchase price to the producer. Thus, from the dealer's perspective, the penalty is totally remedial—i.e., the dealer is required to pay to the government only the precise amount which the dealer is authorized to withhold from the producer.[5]

For the foregoing reasons, we conclude that, from the perspective of Cole, a dealer, the penalty is purely remedial. As the Supreme Court in *Austin* held, "A fine that serves purely remedial purposes cannot be considered "excessive' in any event." 509 U.S. at 622 n. 14, 113 S.Ct. at 2812 n. 14.

Having determined that the instant penalty does not violate the Excessive Fines Clause with respect to Cole himself, we turn next to whether the it violates the Excessive Fines Clause from the perspective of a producer.[6] In our opinion, it is clear that the instant penalty does not violate the Excessive Fines Clause, even from the perspective of a producer. We note again that the Supreme

---

[5]The tobacco regulatory scheme ensures that the over-quota marketing penalty can be purely remedial for dealers in the actual marketplace. Comprehensive regulations require that each time the ownership of a pound of tobacco changes hands, the transaction is recorded and reported. As part of this regulatory scheme, each producer has a marketing card which shows the producer's total allotment or quota. Every time a producer sells tobacco, the quantity of the sale is noted on the card. A purchaser from a producer (e.g., a dealer like Cole) should, and as a practical matter does, look at the producer's card at the time of each purchase. The producer's card should make it readily apparent to the purchaser when a producer has already sold his quota of tobacco. For a fuller description of the regulatory scheme, *see Cole v. U.S. Dep't of Agric.,* 33 F.3d 1263 (11th Cir.1994) (the previous appeal in this case). When a dealer purchases over-quota tobacco from a producer, a fact that should be apparent from the producer's card, the dealer is thrust into the role of "collector." In order to protect itself, such a dealer should withhold from the producer the amount of the penalty, remit the penalty to the government, and pay only the balance of the purchase price to the producer, as specifically authorized by the statute. In the language of the statute, the "penalty shall be paid by ... [the purchasing dealer], but ... [said amount] may be deducted by the buyer from the price paid to the producer." 7 U.S.C. § 1314(a).

[6]Cole never explicitly argued, either in the district court or in this Court, that he is entitled to challenge the instant penalty from the perspective of a producer. At oral argument, the government suggested that Cole had waived such a claim, and also that Cole may not have standing to assert such a claim. Because we readily resolve the merits of the case, we assume *arguendo* that Cole has standing and has not waived the issue. Thus, judicial economy is served by avoiding the need for a remand on this issue.

Court has declined to establish a comprehensive test for determining a violation of the Excessive Fines Clause. We also acknowledge that there is some language in *Austin* suggesting that, unless a civil sanction *solely* serves remedial purposes, it may be considered punishment and thus subject to scrutiny as to whether it violates the Excessive Fines Clause. *Austin,* 509 U.S. at 621, 113 S.Ct. at 2811. For purposes of this case, we can assume *arguendo,* but we expressly do not decide, that the instant penalty is subject to Excessive Fines scrutiny. This, however, is merely the first stage of the analysis; therefore, we turn to the second stage and ask whether the fine is excessive.[7]

The Supreme Court has declined to articulate the appropriate test to determine whether a penalty is excessive. *Austin,* 509 U.S. at 622, 113 S.Ct. at 2812. However, this circuit has employed a proportionality test, which compares the seriousness of the offense to the severity of the fine. *United States v. One Parcel Property,* 74 F.3d 1165 (11th Cir.1996). In other words, "a court must ask: [g]iven the offense for which the owner is being punished, is the fine ... excessive." *Id.* at 1172. As applied to the instant case, the question is whether it is excessive to impose a penalty on a producer who sells more than its quota of tobacco, in the amount of 75% of the price of the over-quota tobacco. For the following reasons, we readily conclude that such a penalty is not excessive.

It is clear from the entire statutory scheme that the purpose of the legislation is to establish national production quotas in order to control and/or eliminate excessive production of tobacco. 7 U.S.C. § 1311(a). It is also clear that Congress had legitimate governmental purposes for this

---

[7]The Supreme Court has referred to the inquiry into excessiveness as the second stage of the Excessive Fines analysis. *Austin,* 509 U.S. at 621 and n. 14, 113 S.Ct. at 2811 and n. 14 (after determining that the civil forfeiture statutes at issue there represented punishment for purposes of the Excessive Fines Clause, the Court remanded for the lower courts to determine in the first instance whether the forfeiture was excessive); *Ursery,* --- U.S. at ---- - ----, 116 S.Ct. at 2146-47 (referring to inquiry into excessiveness of fine as the second stage); *United States v. Dean,* 87 F.3d 1212, 1213 (11th Cir.1996).

legislation: the quota and penalty system was implemented to reduce "disorderly marketing" of tobacco, which Congress found adversely "affects, burdens, and obstructs interstate and foreign commerce." 7 U.S.C. § 1311(b). The statutory scheme divides the national quota into quotas for each state, 7 U.S.C. § 1313(a), and then into quotas for particular farms. 7 U.S.C. § 1313(b). The obvious purpose of the statutory scheme, and in particular the penalty at issue, is to discourage introducing over-quota tobacco into the market. The penalty here is 75% of the price of the over-quota tobacco introduced into the market. Clearly the penalty is proportional to the legitimate government purpose of discouraging over-quota sales. Only if the penalty exceeded 100% of the price of the over-quota tobacco introduced into the market would there even begin to be a question of excessiveness.[8]

## IV. CONCLUSION

We conclude that there has been no violation of either the Double Jeopardy Clause or the Excessive Fines Clause. Accordingly, the judgment of the district court granting summary judgment to Cole is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.[9]

REVERSED AND REMANDED.

---

[8]Indeed, in light of the legitimate governmental purpose of discouraging the introduction of over-quota tobacco into the market, the instant penalty, being less than the full value of the over-quota tobacco, might be considered purely remedial from the perspective of the producer as well as that of the dealer. *See Austin,* 509 U.S. at 622, n. 14, 113 S.Ct. at 2812, n. 14 ("[A] fine that serves purely remedial purposes cannot be considered "excessive' in any event.").

[9]We also agree with the government that the law of the case doctrine does not bar the district court from considering the government's motion for summary judgment.