137 F.3d 1300
 Comm. Fut. L. Rep. P 27,307, 11 Fla. L. Weekly Fed. C 1159
Kenneth GROSSFELD, Murray Stein, Plaintiffs-Appellants,
v.
COMMODITY FUTURES TRADING COMMISSION, et al., Defendants-Appellees.
Kenneth R. GROSSFELD and Murray L. Stein, Petitioners,
v.
The COMMODITY FUTURES TRADING COMMISSION, Respondent.
 Nos. 96-4356, 96-5525.
 United States Court of Appeals,
Eleventh Circuit.
 March 27, 1998.
 
 Michel O. Weisz, Albornoz, Secredo & Weisz, Coral Gables, FL, for Grossfeld and Stein.
 James T. Kelly, Asst. Gen. Counsel, Laura V. Rubino, Larry D. Gasteiger, Laura J. Vallance, John Batterman, Office of General Counsel, Office of the Commodity Future Trading Comm., Div. of Enforcement, Washington, DC, for Defendants-Appellees and Respondent.
 Appeal from the United States District Court for the Southern District of Florida.
 Petition for Review of an Order of the Commodity Futures Trading Commission.
 Before ANDERSON and CARNES, Circuit Judges, and O'KELLEY*, Senior District Judge.
 PER CURIAM:
 
 
 1
 Petitioners-Appellants Kenneth R. Grossfeld and Murray L. Stein request a review of an order of the Commodity Futures Trading Commission.[1] They argue that the separate monetary penalties levied against them by the National Futures Association ("NFA") and the Commodities Futures Trading Commission ("Commission") violated the Double Jeopardy Clause. The Double Jeopardy challenge is the only issue presented by appellants in this appeal.[2]I. Facts and Procedural History
 
 
 2
 Grossfeld is a commodities broker. The NFA, a self-regulatory organization designed to oversee commodities brokers, brought charges against him. Grossfeld settled with the NFA by agreeing to pay fines of about $85,000. Subsequently, the Commission commenced administrative proceedings, charging Grossfeld with violations of the antifraud and supervision provisions of the Commodities Exchange Act. Grossfeld was found liable for these violations and fined $1.8 million.[3]
 
 II. Standard of Review
 
 3
 Possible violations of the Double Jeopardy Clause raise a question of law, which this Court reviews de novo. See United States v. Rivera, 77 F.3d 1348, 1350 (11th Cir.1996).
 
 III. Discussion
 
 4
 The Double Jeopardy Clause provides that no "person [shall] be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., amend. V. It "protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). Here, Grossfeld alleges the third type of violation. He argues that the fines levied against him by the NFA and the Commission are multiple punishments for the same offense. Because we conclude that the Commission fine is not a "punishment" in the constitutional sense, we find that the successive fines do not violate the Double Jeopardy Clause.[4]
 
 
 5
 The Supreme Court has recently clarified[5] the test for determining whether a particular sanction is criminal or civil for the purposes of double jeopardy analysis:
 
 
 6
 Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. Helvering, supra, at 399[, 58 S.Ct., at 633]. A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." Ward, 448 U.S., at 248[, 100 S.Ct., at 2641]. Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," id. at 248-249[, 100 S.Ct., at 2641], as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty," Rex Trailer Co. v. United States, 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956).
 
 
 7
 In making this latter determination, the factors listed in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169, 83 S.Ct. 554[, 567-68], 9 L.Ed.2d 644 (1963), provide useful guideposts, including: (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment--retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned." It is important to note, however, that "these factors must be considered in relation to the statute on its face," id. at 169[, 83 S.Ct., at 568], and "only the clearest proof" will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty, Ward, supra, at 249, 100 S.Ct., at 2641-2642 (internal quotation marks omitted).
 
 
 8
 Hudson v. United States, --- U.S. ----, ----, 118 S.Ct. 488, 493, 139 L.Ed.2d 450 (1997).
 
 
 9
 It is evident that Congress intended the penalty for violations of the Commodities Exchange Act to be civil in nature. The Act expressly provides that the Commission may assess a "civil penalty ... for each such violation...." 7 U.S.C. § 9 (emphasis added). Furthermore, the fact that the authority to issue the penalties is conferred upon the Commission, an administrative agency, " is prima facie evidence that Congress intended to provide for a civil sanction." Hudson, --- U.S. at ----, 118 S.Ct. at 495 (citations omitted).
 
 
 10
 Having determined that Congress intended for the penalty to be civil, we turn to the second part of the test, whether it is "so punitive in form and effect as to render them criminal despite Congress's intent to the contrary." United States v. Ursery, 518 U.S. 267, ----, 116 S.Ct. 2135, 2138, 135 L.Ed.2d 549 (1996). The relevant language of the penalty provision authorizes the Commission, upon finding violations, to "assess such a person a civil penalty of not more than the higher of $100,000 or triple the monetary gain to such person for each violation." 7 U.S.C. § 9. "In determining the amount of the money penalty assessed under section 9 of this title, the Commission shall consider the appropriateness of such penalty to the gravity of the violation." 7 U.S.C. § 9a.
 
 
 11
 We examine the foregoing penalty provision in light of the Kennedy factors. First, the penalty does not involve an "affirmative restraint," such as imprisonment. Second, the Supreme Court has determined that money penalties have not historically been viewed as punishment: "[T]he payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as enforceable by civil proceedings since the original revenue law of 1789." Hudson, --- U.S. at ----, 118 S.Ct. at 496 (quoting Helvering, 303 U.S. at 400, 58 S.Ct., at 633). Third, these penalties can be assessed on the basis of either willful or nonwillful conduct. With respect to the fifth Kennedy factor, the behavior which triggers the penalty--i.e., the violation of the Act--could result in criminal sanctions.[6] However, the Court, in Hudson, found that fact insufficient to render the civil sanction "criminal" for the purposes of double jeopardy. Hudson, --- U.S. at ----, 118 S.Ct. at 496. See also Ward, 448 U.S. at 249, 100 S.Ct. at 2641-42 (holding that Congressional intent to provide civil penalty is not overcome by the fact that the penalized behavior is also a crime).
 
 
 12
 The fourth Kennedy factor is whether the sanction promotes deterrence or retribution, the traditional aims of punishment. While the penalty does promote deterrence, the Supreme Court has recognized that all civil penalties will have some deterrent effect. See Hudson, --- U.S. at ----, 118 S.Ct. at 493. This does not necessarily render a sanction criminal punishment because "deterrence 'may serve civil as well as criminal goals.' " Hudson,--- U.S. at ----, 118 S.Ct. at 496 (quoting Ursery, 518 U.S. at ----, 116 S.Ct. at 2149). For example, this particular penalty is intended to deter fraudulent behavior by brokers and protect consumers. See e.g., S.Rep. No. 101-191, at 2, 10 (1989). Moreover, the penalty serves more generally to ensure the integrity of the commodities markets. See e.g., S.Rep. No. 102-22, at 2 (1991), reprinted in 1992 U.S.C.C.A.N. 3103. With respect to Kennedy 's sixth factor, the penalty is rationally related to this alternative, nonpunitive purpose. Finally, with respect to Kennedy 's seventh factor, the penalty is not excessive in relation to this alternative purpose.[7]
 
 
 13
 Most of the Kennedy factors described in Hudson point against a finding that the penalty is so punitive as to transform it into a criminal penalty.[8] Appellant's arguments certainly do not rise to the level of the "clearest proof" required by United States v. Ward, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), to override the legislative intent to create a civil penalty. See Hudson, --- U.S. at ----, 118 S.Ct. at 493 (quoting Ward, 448 U.S. at 249, 100 S.Ct. at 2641-42). Applying the Hudson test, we conclude that the Commission penalty was not a criminal punishment. Therefore, the successive monetary penalties assessed by the NFA and the Commission do not violate the Double Jeopardy Clause.
 
 
 14
 APPEAL NO. 96-5525 IS AFFIRMED. APPEAL NO. 96-4356 IS DISMISSED.
 
 
 
 *
 Honorable William C. O'Kelley, Senior U.S. District Judge for Northern District of Georgia, sitting by designation
 
 
 [1]
 This petition for review is our appeal No. 96-5525. Our appeal No. 96-4356 is an appeal from the district court's dismissal of Grossfeld's and Stein's complaint seeking injunctive and declaratory relief with respect to the underlying administrative proceedings. The district court dismissed the complaint for lack of subject matter jurisdiction. Appellants' brief on appeal does not challenge that ruling, and accordingly appeal No. 96-4356 is DISMISSED
 
 
 [2]
 Because Stein did not preserve this issue in the proceedings below, we would not have entertained his argument which is raised for the first time on appeal. As our discussion of Grossfeld's argument indicates, Stein could not have prevailed in any event
 
 
 [3]
 Grossfeld violated 7 U.S.C. § 6c(b) and 17 C.F.R. 33.10 and 33.7(f)
 
 
 [4]
 In light of our disposition of this matter, we need not address issues relating to the NFA fines: i.e., whether the NFA fine was "punishment" in the Double Jeopardy sense; whether the NFA and Commission proceedings involve the same offenses; or whether the NFA and the Commission are the same sovereign for Double Jeopardy purposes
 
 
 [5]
 Hudson v. United States, --- U.S. ----, ----, 118 S.Ct. 488, 491, 139 L.Ed.2d 450 (1997), "in large part disavow[s] the method of analysis used in United States v. Halper."
 
 
 [6]
 Willful violations of the Act are a felony, "punishable by a fine of not more than $1,000,000 ... or imprisonment for not more than five years, or both, together with the cost of prosecution." 7 U.S.C. § 13
 
 
 [7]
 Grossfeld argues that the $1.8 million fine imposed by the Commission is excessive because it is out of line with other Commission fines and it is unrelated to the government's losses. However, Hudson makes it clear that we are to examine the statute on its face. Hudson, --- U.S. at ----, 118 S.Ct. at 496. The statute directs the Commission to "consider the appropriateness of ... [the] penalty to the gravity of the violation" in determining the amount of the penalty. 7 U.S.C. § 9a(1). In this case, the Commission did consider the gravity of the violation, and concluded that numerous factors indicated the civil penalty of $1.8 million. The Commission considered Grossfeld's ownership interest in and high executive position in the entities perpetrating the wrongdoing, his recidivism and his continuing violation of the outstanding cease and desist order, and the high level of customer losses (conservatively estimated at more than $2 million)
 
 
 [8]
 Indeed, the Kennedy factors play out in the instant case in similar fashion as in Hudson. --- U.S. at ----, 118 S.Ct. at 496. See also Cole v. United States Dep't of Agric., 133 F.3d 803 (11th Cir.1998)