[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 16-16899 and 17-10578
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cr-20709-PAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL JOHN ALCOCER ROA,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(October 31, 2018)

Before ROSENBAUM, BRANCH, and FAY, Circuit Judges.

PER CURIAM:

After a jury trial, Michael Alcocer Roa was convicted of five counts of wire

fraud and sentenced to 210 months of imprisonment. He now appeals his

convictions and sentence on double-jeopardy grounds.  Alcocer Roa claims that the district court should have dismissed the prosecution against him for violating the Fifth Amendment's Double Jeopardy Clause in light of what he views as prior prosecution and punishment for the same conduct.  First, he says that he has been punished by purportedly civil sanctions, imposed against him in actions brought by the U.S. Commodity Futures Trading Commission ("Commission"), which he maintains were so punitive that they amounted to criminal penalties.  Second, he asserts that he has been prosecuted for and acquitted of this same conduct by Panama, which was acting under the direction and control of the United States.  We hold that Alcocer Roa has not established a double-jeopardy violation because the prior sanctions were civil in nature and because Panama is a separate sovereign.  We therefore affirm.

## I.

In September 2015, a federal grand jury indicted Alcocer Roa for operating a scheme to defraud through Inovatrade, Inc., a company that purportedly traded in foreign currencies.  The indictment alleged that between 2008 and 2011 Alcocer Roa, the CEO of Inovatrade, defrauded over 300 victims out of over $7 million by fraudulently representing to the victims that they could trade foreign currencies through Inovatrade, and then misappropriating the money for his own personal benefit.  He was charged with five counts of wire fraud, 18 U.S.C. § 1343.

2

Alcocer Roa moved to dismiss the indictment based on double-jeopardy grounds.  He asserted that prosecuting him for wire fraud in connection with Inovatrade violated the Double Jeopardy Clause since he had previously been sanctioned for those same activities in an action brought by the Commission.

Alcocer Roa explained that, three years earlier, the Commission had sued him and Inovatrade in 2012 in federal district court in the Southern District of Florida ("Florida Commission action") for violating antifraud provisions of the Commodity Exchange Act ("CEA" or the "Act"), 7 U.S.C. §§ 1, *et seq.*, as amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (July 21, 2010), and regulations promulgated thereunder.[1]  The CEA authorizes the Commission to bring actions in federal district courts to enjoin acts or practices that violate the Act, to enforce compliance with rules and regulations, to order restitution, and to impose civil penalties in an amount up to triple the monetary gain to the person for each violation of the Act.  7 U.S.C. § 13a-1(a), (d)(1).

Alcocer Roa and Inovatrade were found liable in the Florida Commission action for the alleged violations, and the district court entered judgment enjoining

---

[1] Specifically, the Commission alleged that Alcocer Roa and Inovatrade had violated several statutory provisions, 7 U.S.C. §§ 6b(a)(2)(A)–(C) and 6*o*(1), as well as multiple regulations, 17 C.F.R. §§ 4.41, 5.2(b)(1)–(3), and 5.16.

them from trading in commodity futures or foreign currencies and ordering them to pay a "civil monetary penalty" of $28,830,650.97 and restitution of $9,620,216.99.

In assessing the $28.8 million penalty in the Florida Commission action, the Southern District explained that several factors informed its decision, including "whether or not the violations involved core provisions of the Act; whether or not scienter was involved; the consequences flowing from the violative conduct; financial benefits to a defendant; and harm to customers or the market."  The Southern District found that a "substantial" penalty was warranted because Alcocer Roa and Inovatrade "knowingly engaged in fraud, which is a core violation of the Act."  The court noted that Inovatrade's business was almost entirely fraudulent and that the scheme involved over 300 customers, was ongoing for several years, and continued even after Inovatrade had been sued by the Commission in 2011 for similar activities.  The court concluded that a monetary penalty of three times the gain was justified "given the repeated and egregious nature of Defendants' fraudulent scheme."

Claiming that these sanctions constituted criminal punishment, Alcocer Roa moved to dismiss the wire-fraud indictment.  Based on the seven factors identified by the Supreme Court in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69 (1986), Alcocer Roa asserted that he had established by the "clearest proof" that the CEA sanctions imposed by the Southern District, though intended by Congress

4

to be civil in nature, were so punitive in form and effect as to transform them into a criminal penalty.

The district court denied Alcocer Roa's motion, determining that the CEA sanctions did not constitute criminal punishment under the Double Jeopardy Clause. Because the sanctions were prima facie civil, according to the court, Alcocer Roa needed to provide the clearest proof to override the legislature's intent and transform them into a criminal penalty. Analyzing the seven *Kennedy* factors, the court found that Alcocer Roa had not met that heavy burden and denied his motion.

A jury found Alcocer Roa guilty on all counts in April 2016. After the verdict, Alcocer Roa filed *pro se* a renewed motion to dismiss his indictment on double-jeopardy grounds, which defense counsel adopted. In this motion, Alcocer Roa asserted two new grounds for finding a double-jeopardy violation: (1) CEA sanctions imposed in 2011 in an earlier lawsuit by the Commission against him and Inovatrade in the Western District of Missouri ("Missouri Commission action"); and (2) a quasi-criminal investigation in Panama that did not find him liable for the conduct alleged in the present indictment. In the Missouri Commission action, the court had imposed a monetary penalty of $280,000 and enjoined Inovatrade from operating as a retail foreign-exchange dealer or transacting with U.S. customers.

5

The district court denied the renewed motion to dismiss at sentencing. It found no basis to reconsider its earlier determination on the CEA sanctions, and it concluded that the Panama action did not implicate double jeopardy because it was brought by a separate sovereign. The court then sentenced Alcocer Roa to 210 months of imprisonment and ordered restitution in the amount of $7,881,492.83, with the proviso that any amounts paid in satisfaction of the criminal case would be applied dollar for dollar towards satisfaction of the restitution imposed in the Florida Commission action. Alcocer Roa now appeals the denial of his motions to dismiss the indictment on double-jeopardy grounds.

## II.

We review possible violations of the Double Jeopardy Clause *de novo*. *United States v. Rivera*, 77 F.3d 1348, 1350 (11th Cir. 1996). The Double Jeopardy Clause applies to all proceedings that are essentially criminal. *United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 363 (1984). It protects against three distinct abuses: a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *Grossfeld v. Commodity Futures Trading Comm'n*, 137 F.3d 1300, 1302 (11th Cir. 1998).

Alcocer Roa alleges the first and third type of violations. His primary argument is that the severe sanctions imposed in the Florida Commission action

6

constituted criminal punishment, which prevented the court from punishing him for the same conduct in this criminal proceeding. He points to the milder sanctions imposed in the Missouri Commission action to bolster that argument. In addition, he contends that the Panama proceedings constituted an acquittal that barred the prosecution in this case. We address each argument in turn.

## III.

According to the Supreme Court, "[w]hether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." *Hudson v. United States*, 522 U.S. 93, 99 (1997). We first ask whether the legislature, either expressly or impliedly, intended the penalties at issue to be civil or criminal. *Id.* But that inquiry is not dispositive. Even where the legislature has clearly intended punishments to be civil in nature, the "statutory scheme" may be "so punitive either in purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* (citations and quotation marks omitted) (alteration adopted).

In making this latter determination, the seven factors identified by the Court in *Kennedy v. Mendoza-Martinez* provide "useful guideposts." *Id.* They are the following:

(1) whether the sanction involves an affirmative disability or restraint;

(2) whether it has historically been regarded as a punishment;

7

(3) whether it comes into play only on a finding of *scienter*;

(4) whether its operation will promote the traditional aims of punishment—retribution and deterrence;

(5) whether the behavior to which it applies is already a crime;

(6) whether an alternative purpose to which it may rationally be connected is assignable for it; and

(7) whether it appears excessive in relation to the alternative purpose assigned.

*Id.* at 99–100 (quotation marks omitted) (alteration adopted). No one factor controls, "as they may often point in differing directions." *Id.* at 101 (quotation marks omitted). These factors must be considered in relation to the statute "on its face," and "only the clearest proof" can "override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Id.* at 100.

In *Hudson*, the Supreme Court applied this framework to find that monetary penalties and occupational debarment—barring the defendants from further participation in the conduct of any insured depository institution—imposed by the Officer of the Comptroller of the Currency ("OCC") were not a criminal punishment for double-jeopardy purposes. *Id.* at 97, 103–05. The Court explained that the sanctions did not involve an affirmative disability or restraint, had not historically been regarded as punishment, and did not come into play only on a finding of *scienter*. *Id.* at 104–05. Further, while the Court observed that the OCC sanctions served the traditional goal of deterrence and that the conduct for which

8

sanctions were imposed formed the basis for the defendants' criminal indictments, it reasoned that those factors did not suffice to show by the "clearest proof" that the monetary penalties and debarment sanctions were criminal. *Id.* at 105.

## A.

Following the Supreme Court's decision in *Hudson*, which "clarified the test for determining whether a particular sanction is criminal or civil for the purposes of double jeopardy analysis,"[2] we considered the double-jeopardy consequences of a $1.8 million fine imposed by the Commission under 7 U.S.C. § 9 for violations of antifraud and supervision provisions[3] of the CEA. *Grossfeld*, 137 F.3d at 1302–04. Applying *Hudson*'s framework, we held that the fine was a civil penalty for purposes of the Double Jeopardy Clause. *Id.*

The penalty provision at issue in *Grossfeld*, 7 U.S.C. § 9, "authorize[d] the Commission, upon finding violations, to assess such a person a civil penalty of not more than the higher of $100,000 or triple the monetary gain to such person for each violation." *Id.* at 1303 (quotation marks omitted). (Similarly, the penalty provision at issue here, 7 U.S.C. § 13a-1(d), authorizes district courts, upon finding

---

[2] *Hudson* "in large part disavow[s] the method of analysis used in *United States v. Halper*, 490 U.S. 435[] (1989)," which had held that a civil monetary penalty constituted a criminal punishment because the sanction "was so 'overwhelmingly disproportionate' to the injury caused that it could not 'fairly be said solely to serve [the] remedial purpose' of compensating the Government for its loss." *Hudson*, 522 U.S. at 96, 101 (quoting *Halper*, 490 U.S. at 448).

[3] More precisely, Grossfeld violated 7 U.S.C. § 6c(b) and 17 C.F.R. §§ 33.10 and 33.7(f). *Grossfeld*, 137 F.3d at 1302 n.3.

violations, to assess "a civil penalty in the amount of not more than the greater of $100,000 or triple the monetary gain to the person for each violation.")  Further, the Act provided that, "[i]n determining the amount of the money penalty assessed under section 9 of this title, the Commission shall consider the appropriateness of such penalty to the gravity of the violation." 7 U.S.C. § 9a.

Conducting the two-part analysis outlined in *Hudson*, we first found that it was "evident that Congress intended the penalty for violations of the [Act] to be civil in nature."  *Grossfeld*, 137 F.3d at 1303.  We noted that the Act expressly designated the monetary penalty as a "civil penalty."  *Id.*

Turning to the second part of the analysis, we analyzed the seven *Kennedy* factors to determine whether the sanctions were so punitive as to render them criminal despite Congress's intent to the contrary.  *Id.*  We concluded that most of the *Kennedy* factors pointed against a finding that the penalties amounted to criminal punishment, explaining,

> First, the penalty does not involve an "affirmative restraint," such as imprisonment.  Second, the Supreme Court has determined that money penalties have not historically been viewed as punishment . . . . Third, these penalties can be assessed on the basis of either willful or nonwillful conduct.  With respect to the fifth *Kennedy* factor, the behavior which triggers the penalty—i.e., the violation of the Act— could result in criminal sanctions.  However, the Court, in *Hudson*, found that fact insufficient to render the civil sanction "criminal" for the purposes of double jeopardy.
>
> The fourth *Kennedy* factor is whether the sanction promotes deterrence or retribution, the traditional aims of punishment.  While

the penalty does promote deterrence, the Supreme Court has recognized that all civil penalties will have some deterrent effect. This does not necessarily render a sanction criminal punishment because deterrence may serve civil as well as criminal goals. For example, this particular penalty is intended to deter fraudulent behavior by brokers and protect consumers. Moreover, the penalty serves more generally to ensure the integrity of the commodities markets. With respect to *Kennedy*'s sixth factor, the penalty is rationally related to this alternative, nonpunitive purpose. Finally, with respect to *Kennedy*'s seventh factor, the penalty is not excessive in relation to this alternative purpose.

*Id.* at 1303–04 (citations, footnotes, and quotation marks omitted). Because most of the factors pointed against a finding that the penalty was criminal, we held that Grossfeld had not offered the "clearest proof" required by the Supreme Court "to override the legislative intent to create a civil penalty." *Id.* at 1304.

With regard to the final factor, we rejected Grossfeld's argument "that the $1.8 million fine imposed by the Commission [wa]s excessive because it [wa]s out of line with other Commission fines and it [wa]s unrelated to the government's losses." *Id.* at 1303 n.7. We explained that the statute must be examined "on its face," noting that the statute directed the Commission to "consider the appropriateness of . . . [the] penalty to the gravity of the violation" in determining the amount of the penalty. 7 U.S.C. § 9a(1)." *Id.* And we found that the Commission had considered the gravity of the violation in concluding "that numerous factors indicated the civil penalty of $1.8 million," including "Grossfeld's ownership interest in and high executive position in the entities

11

perpetrating the wrongdoing, his recidivism and his continuing violation of the outstanding cease and desist order, and the high level of customer losses." *Id.*

**B.**

Here, in light of *Hudson* and *Grossfeld*, the district court was correct to conclude that the monetary penalties and debarment sanctions imposed against Alcocer Roa for violating the CEA were not a criminal punishment for purposes of the Double Jeopardy Clause.

As we mentioned, the CEA authorizes the Commission to bring actions in federal district courts to enjoin acts or practices that violate the Act and to enforce compliance with rules and regulations. *See* 7 U.S.C. § 13a-1(a). In such an action for injunctive relief, § 13a-1(d) authorizes a district court, upon finding violations, to order restitution and to impose "a civil penalty in the amount of not more than the greater of $100,000 or triple the monetary gain to the person for each violation." *Id.* § 13a-1(d)(1)(A); *see* 17 C.F.R. § 143.8 (providing for inflation-adjusted penalty amounts in "civil injunctive action[s]" under § 13a-1).

At the first stage of the analysis, Alcocer Roa concedes that Congress "[c]learly" intended these sanctions to be civil in nature. We agree. *See* 7 U.S.C. § 13a-1(d) (labeling the monetary penalties as "civil penalt[ies]"); *cf. Grossfeld*, 137 F.3d at 1303 ("Congress intended the penalty for violations of the [Act] to be civil in nature.").

12

Turning to the second stage of the analysis, Alcocer Roa has not shown by the "clearest proof" that the sanctions are so punitive as to be essentially criminal. *See Hudson*, 522 U.S. at 100.  We discuss each of the seven *Kennedy* factors, though not necessarily in the order outlined above.

First, the CEA sanctions do not involve an affirmative disability or restraint. *Id.* at 99.  While Alcocer Roa has been prohibited from trading in commodity futures and foreign currencies, the Supreme Court has made clear that occupational debarment "do[es] not involve an 'affirmative disability or restraint,' as that term is normally understood."  *Id.* at 104 ("While petitioners have been prohibited from further participating in the banking industry, this is certainly nothing approaching the infamous punishment of imprisonment." (quotation marks omitted)).

Second, "neither money penalties nor debarment has historically been viewed as punishment."  *Id.*  The Court has "long recognized that revocation of a privilege voluntarily granted, such as a debarment, is characteristically free of the punitive criminal element."  *Id.* (quotation marks omitted).  "Similarly, the payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as enforceable by civil proceedings since the original revenue law of 1789."  *Id.* (quotation marks omitted).

Third, "neither sanction comes into play 'only' on a finding of scienter."  *Id.* The provision authorizing injunctive relief does not require a finding of willful or

13

fraudulent conduct. *See* 7 U.S.C. § 13a-1(a). Nor does the penalty provision, which allows the imposition of a monetary penalty for violations of the CEA "on a proper showing." *Id.* § 13a-1(d)(1). Thus, sanctions under the CEA "can be assessed on the basis of either willful or nonwillful conduct." *Grossfeld*, 137 F.3d at 1303. Although Alcocer Roa was found to have violated antifraud provisions of the CEA in the Florida Commission action, "the Double Jeopardy inquiry focuses on the statute on its face, not on the facts of [Alcocer Roa's] particular case." *Cole v. U.S. Dep't of Agric.*, 133 F.3d 803, 807 n.4 (11th Cir. 1998).

Fourth, and relatedly, while "the behavior which triggers the penalty—i.e., the violation of the Act—could result in criminal sanctions," that fact is "insufficient to render the civil sanction 'criminal' for the purposes of double jeopardy." *Grossfeld*, 137 F.3d at 1303. In other words, the fact that "the conduct for which [CEA] sanctions are imposed may also be criminal (and in this case formed the basis for [defendant's] indictment[]) . . . is insufficient to render the money penalties and debarment sanctions criminally punitive." *Hudson*, 522 U.S. at 105.

Fifth, the CEA sanctions do promote deterrence, but "[t]his does not necessarily render a sanction criminal punishment because deterrence may serve civil as well as criminal goals." *Grossfeld*, 137 F.3d at 1303 (quotation marks omitted). We have stated that "the CEA is a remedial statute that serves the crucial

14

purpose of protecting the innocent individual investor—who may know little about the intricacies and complexities of the commodities market—from being misled or deceived." *Commodity Futures Trading Comm'n v. R.J. Fitzgerald & Co., Inc.*, 310 F.3d 1321, 1329 (11th Cir. 2002). And the sanctions at issue here, just like the sanctions in *Grossfeld*, serve the goals of "deter[ring] fraudulent behavior by brokers and protect[ing] consumers" and, more generally, "ensur[ing] the integrity of the commodities markets." *Grossfeld*, 137 F.3d at 1303.

Sixth, the penalties are rationally related to the alternative, nonpunitive purposes of protecting consumers and ensuring the integrity of the commodities market. *Id.*; *see Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 123 (2d Cir. 1999) ("We agree with the Commission that the purpose of sanctions under the CEA is twofold: to further the [CEA]'s remedial policies and to deter others in the industry from committing similar violations." (quotation marks omitted)).

Finally, the penalties are not excessive in relation to these alternative purposes. *See Hudson*, 522 U.S. at 99–100; *Grossfeld*, 137 F.3d at 1303. In *Grossfeld*, we held that it was not excessive, in relation to these same alternative purposes, for Congress to authorize "the Commission, upon finding violations, to 'assess such a person a civil penalty of not more than the higher of $100,000 or triple the monetary gain to such person for each violation.'" 137 F.3d at 1303

(quoting 7 U.S.C. § 9).  The penalty provision at issue here is virtually identical, except for which entity has the authority to impose the penalty.  *See* 7 U.S.C. § 13a-1(d)(1) (authorizing *district courts*, instead of the Commission, to impose "a civil penalty in the amount of not more than the greater of $100,000 or triple the monetary gain to the person for each violation").  Looking to the statute "on its face," therefore, the monetary penalties are not excessive in relation to the alternative, nonpunitive purposes of CEA sanctions.[4]  *See Hudson*, 522 U.S. at 101 (explaining that we evaluate "the statute on its face to determine whether it provided for what amounted to a criminal sanction," rather than "the character of the actual sanctions imposed" (quotation marks omitted)).

We recognize that the CEA sanctions imposed against Alcocer Roa are severe, but Alcocer Roa has not shown that they are so punitive as to transform them into a criminal penalty.  Most of the *Kennedy* factors point against a finding that the penalty is criminally punitive, and the ones that point the other way are insufficient to override by the "clearest proof" the legislative intent to create a civil penalty.  *See Hudson*, 522 U.S. at 104–05; *Grossfeld*, 137 F.3d at 1304.

---

[4] Plus, similar to what occurred in *Grossfeld*, the district court in the Florida Commission action considered the severity of the conduct in relation to the purposes of the Act in concluding that the substantial monetary penalty of $28.8 million, three times the restitution amount, was justified.  *See Grossfeld*, 137 F.3d at 1303 n.7.  As noted above, the court found that Alcocer Roa and Inovatrade "knowingly engaged in fraud, which is a core violation of the Act," that the fraudulent activity was "repeated and egregious," involving over 300 customers and the misappropriation of nearly all of the customers' funds, and that Alcocer Roa and Inovatrade continued to deceive and defraud investors and operate unlawfully as a retail foreign-exchange dealer despite being sanctioned and enjoined in the Missouri Commission case.

Accordingly, the district court correctly found that the CEA sanctions did not count as a criminal penalty.

## IV.

Alcocer Roa next argues that this wire-fraud prosecution was barred because Panama had previously initiated a prosecution against him at the direction of the United States.  We disagree.

In general, the Double Jeopardy Clause does not bar successive prosecutions by the federal government and another country.  *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1360 (1994).  This "dual sovereignty doctrine" is based upon the common-law concept that a crime is an offense against the sovereignty of a government. *Id.*

We have acknowledged that a "sham" or "tool" exception to the dual-sovereignty doctrine may exist, though we have never decided that it does. *United States v. 817 N.E. 29th Drive, Wilton Manors, Fla.*, 175 F.3d 1304, 1311 n.13 (11th Cir. 1999).  If this exception does exist, it is limited to situations where "one sovereign was so dominated, controlled, or manipulated by the actions of the other that it did not act of its own volition." *Baptista-Rodriguez*, 17 F.3d at 1361.

Alcocer Roa's argument that the Panamanian proceedings should be given double-jeopardy effect is precluded by the dual-sovereignty doctrine.  To the extent the sham-prosecution exception is recognized in this jurisdiction, Alcocer

17

has not demonstrated that it applies. *See id.* at 1360–61. Alcocer Roa has provided no evidence that he was prosecuted in Panama or that the United States government was involved in that prosecution, let alone that Panama was "so dominated, controlled, or manipulated" by the United States that it did not act of its own volition. *Id.* at 1361. Accordingly, even if the sham-prosecution exception is valid, Alcocer Roa has not shown that it applies here.

## V.

In sum, the district court properly rejected Alcocer Roa's attempts to have this criminal prosecution dismissed based on double-jeopardy grounds. We therefore affirm his convictions and sentence.

**AFFIRMED.**