**FLORIDA VIDEO XPRESS, INC.,**
etc., et al., Plaintiffs,

v.

**ORANGE COUNTY, FLORIDA,**
**Defendant.**

No. 97–616–CIV–ORL–22.

United States District Court,
M.D. Florida,
Orlando Division.

Oct. 24, 1997.

David A. Wasserman, Winter Park, FL, for plaintiffs.

Joel D. Prinsell, Linda Sue Brehmer Lanosa, Orange County Attorney's Office, Orlando, FL, for defendant.

## *ORDER*

CONWAY, District Judge.

Upon the Court's review of this case, it is ORDERED as follows:

1. Magistrate Judge James G. Glazebrook's well–reasoned Report and Recommendation (Dkt.40), filed August 29, 1997, is APPROVED AND ADOPTED. Plaintiffs

have not demonstrated a substantial likelihood of success on the merits, and they have not met the other requirements for issuance of a preliminary injunction.

2. Plaintiffs' Objections (Dkt.47) to the Report and Recommendation, filed September 12, 1997, are OVERRULED.

3. Plaintiffs' Application for Preliminary Injunction (Dkt.2), filed May 16, 1997, is DENIED.

4. The Defendant's Response to Plaintiffs' Objection to Magistrate's Report and Recommendation (Dkt 51), filed September 29, 1997, is 31 pages in length. Local Rule 3.01(c) provides that, absent Court permission, legal memoranda shall not exceed 20 pages. In the future, defense counsel shall comply with that Rule.

### REPORT AND RECOMMENDATION

GLAZEBROOK, United States Magistrate Judge.

This cause came on for hearing on August 7, 1997 and August 18, 1997 on the following motion:

**MOTION: PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION** [Docket No. 2]

**FILED:** May 16, 1997

**RECOMMENDATION: DENIED.** This cause came on for hearing on August 7, 1997 and August 18, 1997. For the reasons set forth below, it is RECOMMENDED that the motion be DENIED.

### I. Introduction

In 1983, Orange County promulgated an Adult Entertainment Code which regulates, *inter alia*, adult entertainment and bookstores. *See* Docket No. 30 at 1. The Adult Entertainment Code has been amended in 1984, 1985, 1987, 1990, 1992, 1993, 1994, and twice in 1996.[1] *See* Docket No. 30 at 1.

Video Xpress, which opened in June of 1992, sells and rents adult and non-adult materials. *See* Docket No. 1 at 4. Masquerade, which opened in March of 1995, sells

various merchandise, including adult materials. *Id.* Neither Video Xpress nor Masquerade applied for an adult entertainment license. *See* Docket Nos. 1, 30 at 4. Because Video Xpress and Masquerade had not applied for and acquired an adult entertainment license, the Orange County Adult Entertainment Code prohibited them from operating as adult bookstores. *See* Docket No. 3 at 2. Accordingly, both Video Xpress and Masquerade attack the Adult Entertainment Code as facially unconstitutional. *See* Docket No.1.[2] On May 16, 1997, Video Xpress and Masquerade filed this motion seeking a preliminary injunction, pursuant to Fed.R.Civ.P. 65 and Local Rules 4.05, 4.06, prohibiting enforcement of the Adult Entertainment Code. *See* Docket No. 2. On July 18, 1997, Orange County filed its opposition to the motion. *See* Docket No. 30.[3]

### II. The Adult Entertainment Code

Section 3–26 of the Adult Entertainment Code prohibits an adult entertainment establishment from operating absent an adult entertainment license. *See* ORANGE COUNTY, FLORIDA, CODE [hereinafter "Code"] § 3–36(a). An "adult entertainment establishment" includes, *inter alia*, an "adult bookstore." *See* Code § 3–6. Code § 3–6 also defines "adult bookstore" as:

> an establishment which advertises, sells or rents, or offers for sale or rent, adult material.

> This definition is not intended to apply, and it is an affirmative defense to an alleged violation of this chapter regarding operating an adult bookstore without an adult entertainment license, if the alleged violator demonstrates that at the establishment:

> (1) admission to all or any part of the establishment is not restricted to adults only; and

to apply for a license precludes an as applied challenge.

---

1. The two 1996 amendments became effective September 18, 1996 and November 4, 1996, respectively. *See* Docket No. 30, Ex. 1, 2.

2. While Video Xpress and Masquerade initially argued at the hearing that they were also challenging the Adult Entertainment Code "as applied," they later acknowledged that their failure

3. On July 3, 1997, Orange County filed all unopposed motion for an extension of time to respond to plaintiffs' motion for a preliminary injunction. *See* Docket No. 20. This Court granted an extension until August 5, 1997 to file the response. *Id.*

(2) all adult material is accessible only by employees ("accessible meaning that the item, material, good or product can be touched, picked up or handled by a patron, or is displayed so that substantially more than its name or title is visible"); and

(3) each month, the gross income from the sale and rental of adult material comprises less than ten (10) percent of the gross income from the sale and rental of all material and goods at the establishment; and

(4) the individual items of adult material offered for sale and rental comprise less than twenty–five (25) percent of the total individual unused items publicly displayed at the establishment as stock in trade in each of the following categories; books, magazines, periodicals, other printed matter, photographs, films, motion pictures, videotapes, slides, computer digital graphic recording, other visual representations, compact discs, audio recordings, other audio matter, and they comprise less than twenty–five (25) percent of the total individual used items publicly displayed as stock in trade in each of the categories described above; and

(5) the floor area used to display adult material comprises less than ten (10) percent of the total floor area used to display all material and goods at the establishment.

Adult materials include:

(1) Books, magazines, periodicals, or other printed matter, or photographs, films, motion pictures, videotapes, slides, computer digital graphic recordings or other visual representations, or compact discs, audio recording, or other audio matter, which have as their primary or dominant theme matter depicting, illustrating, describing or relating to specified sexual activities or specified anatomical areas; or

(2) Instruments, novelties, devices or paraphernalia which are designed for use in connection with specified sexual activities, excluding bona fide birth control devices. *See* Code § 3–6.

In applying for an adult entertainment license, an applicant must include certain specified information. *See* Code § 3–27. Once an application has been filed, the Orange County tax collector must evaluate and grant or deny the application. *See* Code §§ 3–28, 3–29. Code § 3–29 sets forth the time period within which the tax collector must grant or deny an application, and sets forth the standards for evaluating an application. Code § 3–29 (bold emphasis supplied) provides:

(a) *Time period for granting or denying license.* The tax collector **shall** grant or deny an application for a license under this article within thirty (30) days from the date of its proper filing. Upon the expiration of the thirtieth day, the applicant shall be permitted to begin operating the establishment as an adult entertainment establishment for which a license is sought **(provided all other required permits, licenses and certificates have been obtained)**, unless and until the tax collector notifies the applicant of a denial of the application and states the reasons for that denial.

(b) *Granting of application for license.* If none of the departments has made a finding that would require that the application be denied, the tax collector shall grant the application, notify the applicant within seven (7) days of the granting, and issue the license to the applicant upon payment of the appropriate annual license fee provided in sections 3–30 and 3–31, with credit as provided in section 3–27(c).

(c) Denying of application for license.

(1) the tax collector shall review the findings reported by all departments and deny the application for any of the following reasons:

a. The application contains material false information or is incomplete;

b. The applicant has failed to comply with a provision of the Florida Statutes, including Chapter 607 regarding corporations, Chapter 620 regarding partnerships, or Florida Statutes

895.09 regarding doing business under fictitious names.

c. The applicant or any of the other individuals listed pursuant to section 3-27(b)(1) has a license under this chapter which has been suspended or revoked;

d. The granting of the application would violate a statute or ordinance or an order from a court of law which effectively prohibits the applicant from obtaining an adult entertainment establishment license.

(2) If the tax collector denies the application, he shall, within seven (7) days notify the applicant of the denial, and state the reason(s) for the denial.

(3) *Reapplication.* If a person applies for a license at a particular location within a period of nine (9) months from the date of denial of a previous application for a license at the location, and there has not been an intervening change in the circumstances which will probably lead to a different decision regarding the former reason(s) for denial, the application shall be rejected.

Finally, Code § 3-10[4] governs review of a decision by the tax collector.[5] Code § 3-10 provides that "[a]ny decision of the tax collector pursuant to article II of this chapter may be immediately reviewed as a matter of right by the circuit court upon the filing of an appropriate pleading by an aggrieved party." *See* Code § 3-10.

## III. The Law

■■■ A plaintiff seeking a preliminary injunction must show: 1.) a substantial likelihood of success on the merits; 2.) a substantial threat of irreparable injury; 3.) that the threatened injury outweighs the injury to the nonmovant; and 4.) that the injunction would not disserve the public interest. *See Statewide Detective Agency v. Miller*, 115 F.3d 904, 905 (11th Cir.1997); *accord,* Local Rule 4.06. Facial challenges are generally disfavored, yet they are permitted in First Amendment challenges in either of two cases: 1.) where the licensing scheme vests unbridled discretion in the decisionmaker; or 2.) where the regulation is challenged as overbroad. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

### A. Licensing of Adult Activities

■■■ Although prior restraints are not unconstitutional *per se*, any such system bears a "heavy presumption against its constitutional validity." *See FW/PBS*, 493 U.S. at 225, 110 S.Ct. at 604 (citations omitted). A licensing scheme is invalid if it places unbridled discretion in the hands of a government official or agency. *See FW/PBS*, 493 U.S. at 224-25, 110 S.Ct. at 604. A censor's discretion is unbridled if there is no limit on the time within which the decisionmaker must issue the license. *See FW/PBS*, 493 U.S. at 224-25, 110 S.Ct. at 604. The First Amendment is satisfied, however, in the context of licensing adult theaters and bookstores so long as the licensing scheme provides for 1.) a prompt decision; and 2.) prompt judicial review. *See FW/PBS*, 110 S.Ct. at 606-07, 493 U.S. at 227-31; *Redner v. Dean*, 29 F.3d 1495, 1500 (11th Cir.1994).[6]

---

**4.** This provision initially appeared at Code § 3-176, but was redesignated as Code § 3-10 by the amendments which became effective November 4, 1996. *See* Docket No. 30, Ex. 1.

**5.** Code § 3-10 applies to denials of an application for·an adult entertainment license. In the event an adult entertainment license is suspended or revoked, the appeals procedure is governed by Code §§ 3-37, 3-38, 3-39.

**6.** The two requirements are based upon *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) in which the Supreme Court held that any system of censorship which risks suppressing constitutionally protected expression must contain the following three procedural protections: 1.) the burden of going to court to suppress the speech and the burden of proof once in court must lie with the censor; 2.) any restraint prior to judicial determination may only be for a specified brief time in order to preserve the status quo; and 3.) there must be an avenue for prompt judicial review of the censor's decision. *See FW/PBS*, 493 U.S. at 227-29 110 S.Ct. at 606; *Redner*, 29 F.3d at 1500. Yet, the Supreme Court stated that the first procedural safeguard is not necessary where a licensing scheme regulates an entire business rather than direct censorship of particular expressive material. *See FW/PBS*, 493 U.S. at 227-31, 110 S.Ct. at 606-07; *Redner*, 29 F.3d at 1500.

Both requirements promote the prompt exhaustion of administrative remedies. If these two requirements are satisfied, then the licensing scheme satisfies the First Amendment.

■ The first procedural safeguard permits restraint of the expressive activity prior to judicial review only for a specified and brief period of time that is necessary to maintain the status quo. *See Redner,* 29 F.3d at 1500. A licensing scheme will not survive constitutional muster if it: 1.) does provide a definite time period in which the decisionmaker must render a decision; or 2.) does not provide a definite time period in which the Board must review the decisionmaker's decision. *See Redner,* 29 F.3d at 1501. It is sufficient that the decisionmaker "shall" issue a decision within forty-five days. *See. Redner,* 29 F.3d at 1500.[7] A time period is illusory, however, if it merely provides that the decisionmaker "may" issue a decision within forty–five days, and does not provide the applicant with an absolute right to begin operation in the event the censor does not grant or deny the license within the time period. *See Redner,* 29 F.3d at 1500–01.

■ The second procedural safeguard is the assurance of prompt judicial review. *See Redner,* 29 F.3d at 1501. This assures an endpoint to the exhaustion of administrative remedies. The statute or ordinance must expressly provide for prompt judicial review of the decision to suppress expressive conduct. *See Redner,* 29 F.3d at 1501 n. 9 (citing *Southeastern Promotions Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975)). The mere availability of Florida's common–law writ of certiorari for the review of exhausted administrative decisions does not, in itself, satisfy the requirement of prompt judicial review. Exhaustion may take far too long, delaying the judicial review which eventually becomes available. The ordinance also must contain an express provision providing for prompt judicial review. *See Redner,* 29 F.3d at 1502.

**B. Overbreadth and Vagueness.**

■ A statute is overbroad if it reaches a substantial amount of constitutionally protected conduct. *See Daniel v. City of Tampa,* 38 F.3d 546, 551 n. 10 (11th Cir.1994). The concern focuses on the fear that the ordinance may deter constitutionally protected conduct. *See Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

**IV. Application**

**A. Substantial Likelihood of Success on the Merits**

Plaintiffs argue that there is a substantial likelihood of success on the merits, *see Miller,* 115 F.3d at 905, because: 1.) the change in § 3–29 from "may" to "shall" is illusory because it does not provide an absolute right to operate the establishment if the decisionmaker does not render a decision within thirty days of filing; 2.) there is no guarantee for prompt judicial review in state court; and 3.) the definition of "adult bookstore" in § 3–6 is overbroad because it places an affirmative burden upon the business to establish that it is not an "adult bookstore" even if it contains a single piece of "adult material." *See* Docket No. 3.

**1. Untimely Decisions by the Tax Collector**

An adult licensing scheme is facially invalid if it places unbridled discretion in the hands of the decisionmaker. *See FW/PBS,* 493 U.S. at 224–25, 110 S.Ct. at 604. The decisionmaker possesses unbridled discretion, *inter alia,* where the applicable ordinance fails to place limits on the time within which a decision must be rendered. *See FW/PBS,* 493 U.S. at 225–29, 110 S.Ct. at 605–06; *Redner,* 29 F.3d at 1500. Further, the failure of the decisionmaker to render a decision within the applicable time period cannot bar an applicant from operating the business. *See Redner,* 29 F.3d at 1500.

■ Plaintiffs argue that the Adult Entertainment Code does not permit the applicant to begin operating in the event the tax collec-

---

**7.** Additionally, the Eleventh Circuit has cited with approval cases allowing sixty and ninety day time periods. *See Redner,* 29 F.3d at 1500 (citations omitted).

tor does not render a prompt decision. *See* Docket No. 3 at 5–7. Plaintiffs argue that while the Adult Entertainment Code has changed the language in Code § 3–29(a) from "may" to "shall," the change is illusory due to the inclusion of the following parenthetical. *Id.; see also Redner v. Dean,* 29 F.3d 1495. Specifically, plaintiffs argue that the inclusion of the parenthetical "(provided that all other required permits, licenses and certificates have been obtained)" as a condition precedent to operating an adult entertainment establishment renders the provision constitutionally infirm because plaintiffs do not have an "absolute right" to operate as an adult entertainment establishment in the event the tax collector does not render a decision within thirty days. *See* Docket No. 3 at 5.

The Court disagrees. Code § 3–29 provides that the tax collector "*shall* grant or deny the application" within thirty days. The parenthetical language, when read within the context of the statute, merely instructs an applicant that it is not exempt from obtaining the other permits normally required of all businesses for operation. *See* Code § 3–29(a). In other words, the failure to obtain an adult entertainment license cannot operate as a bar to operating an establishment in the event the tax collector does not render a decision within thirty days. However, an applicant's failure to obtain other permits and licenses may have its normal and usual effect, which may be to bar the establishment from operating, notwithstanding the tax collector's failure to render a decision on the adult entertainment license application.

The Court of Appeals held the provision in *Redner* to be facially invalid because its "may" language did not provide the applicant with an "absolute right" to operate at the end of the time period in the event that the decisionmaker did not render a timely decision. *See Redner,* 29 F.3d at 1501.

Plaintiffs argue that in order to survive constitutional muster, a statute must provide an applicant with an absolute right to begin operations, regardless of the status of other licenses, in the event the decisionmaker does not render a timely decision. *See* Docket No. 3 at 5. The Court rejects plaintiffs' argument as overbroad.

*Redner* simply provides that, by indecision, a decisionmaker cannot prohibit an applicant from operating an establishment. *Redner,* however, does not permit an applicant to ignore all other relevant statutes and code provisions that require additional permits, licenses, or certificates. *See Redner,* 29 F.3d at 1501. Plaintiffs argue too much if they seek to invalidate the Code because it does not exempt adult entertainment businesses from the fire codes, the building codes, and the health and safety codes of Orange County when the tax collector is slow to render a decision on an application for an adult entertainment license. *See* Docket No. 3 at 5—7. The argument is not supported by the plain language of *Redner. See Redner,* 29 F.3d at 1501. The challenged parenthetical language does not place unbridled discretion in the hands of the tax collector, and does not render the thirty day time limit in Code § 3–29 illusory.

### 2. Prompt Judicial Review

An adult licensing scheme is facially invalid if it does not provide for prompt judicial review. *See FW/PBS,* 493 U.S. at 227–29, 110 S.Ct. at 606; *Redner,* 29 F.3d at 1501–02. An adult licensing scheme is constitutional, however, if it does contain a provision for prompt judicial review. *See Redner,* 29 F.3d at 1501. *Redner* notes that "the statute, regulation, or ordinance itself must explicitly provide for prompt judicial review of the decision to suppress expressive activity," a common–law remedy or a common–law writ of certiorari is insufficient. *See* 29 F.3d at 1501 n. 9.[8] *Redner* does not require expedited

---

8. The Eleventh Circuit, in *Redner,* addressed competing approaches to the Freedman requirement for prompt judicial review. *See Redner,* 29 F.3d at 1501 n. 9. The Court declined to follow the Seventh Circuit, which has held that the prompt judicial review requirement is satisfied by the Court's inherent powers, therefore an or-

dinance need not expressly provide for prompt judicial review. *See Graff v. City of Chicago,* 9 F.3d 1309, 1324 (7th Cir.1993). Instead, this circuit follows the decisions which have held that an adult licensing scheme is invalid where it does not expressly provide for prompt judicial review. *See Redner,* 29 F.3d at 1501 n. 9 (citing

review, it simply requires that the ordinance contain an express provision providing for judicial review of an adverse decision. *See Redner*, 29 F.3d at 1501.

■ Plaintiffs argue that the Adult Entertainment Code is facially unconstitutional because Code § 3–10 does not provide for prompt judicial review of a denial of an application for ·an adult entertainment license. *See* Docket No. 3 at 7—8. Specifically, plaintiffs argue that the Code only provides for prompt judicial filing, not prompt judicial review. *Id.* Plaintiffs further argue that *Redner* provides that "a state's statutory or common–law mechanisms for review of administrative decisions may not be adequate 'prompt judicial review.'" *See* Docket No. 3 at 7. Plaintiffs argue that in·order to survive constitutional· scrutiny, the Code must provide for actual review by a court within a period of time. The Court's discretion in determining when and whether it will address an issue, argue the plaintiffs, is insufficient. *See* Docket No. 3 at 8. Plaintiffs' argument lacks merit.

The Adult Entertainment Code provides that "[a]ny decision of the tax collector pursuant to article II of this chapter may be *immediately reviewed* as a matter of right by the circuit court upon the filing of an appropriate pleading by an aggrieved party." *See* Code § 3–10 (emphasis added). This provision provides for prompt judicial review within the meaning of *Freedman, FW/PBS,* and *Redner.* The Code requires no further exhaustion of administrative remedies after the tax collector decides. Orange County need not, and could not mandate the manner or time within which the judiciary must review an adverse decision by the tax collector. This Court asked counsel for the plaintiffs at the hearing how they would modify the Code to meet plaintiffs' difficult test for constitutional scrutiny, and counsel refused to provide an answer, citing ethical concerns regarding advising Orange County regarding

drafting legislation. Plaintiffs have not established that the Adult Entertainment Code fails to provide for prompt judicial review.

### 3. Additional Bases for Attack

■ Plaintiffs contend that the definition of adult bookstore is overbroad because it includes the dissemination of any adult material, except where the entity establishes that it meets the exemption set forth in Code § 3–6. *See* Docket No. 3 at 9–15. Plaintiffs argue that because the ordinance shifts the burden to the entity to establish that it is not within the definition set forth in Code § 3–6, it is overbroad.[9] *Id.* Yet, in *FW/PBS*, the Supreme Court stated that where the applicant is a business, the licensing authority need not bear the burden of going to court to effect the denial of a license, and need not bear the burden of proof once in court. *See* .493 U.S. at 229–31, 110 S.Ct. at 607. Therefore, Code § 3–6 is not overbroad simply because it shifts the burden to a business to prove that it is not an "adult entertainment establishment." Such an approach is permissible because there is every incentive for the applicant to pursue a licensing decision through the courts. *See FW/PBS*, 493 U.S. at 229–31, 110 S.Ct. at 607.

■ To the extent that plaintiffs challenge the ten percent of gross income limitation in Code § 3–6, *see* Docket No. 3 at 19–20, Orange County is entitled to rely on the experiences of other cities and in particular on the detailed findings of the courts in enacting zoning ordinances. *See City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 51–53, 106 S.Ct. 925, 931, 89 L.Ed.2d 29 (1986). The First Amendment does not require Orange County, prior to enactment, to conduct new studies or produce evidence independent of that already generated by other cities, so long as the evidence the city relies upon is reasonably believed to be relevant to the problem addressed by the ordinance. *Id.* Accordingly, plaintiffs are not likely to succeed on their challenge to the ten percent

---

*Southeastern Promotions Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975)).

**9.** Plaintiffs also separate out the exemption from the definition and argue that the definition is overbroad because it regulates an entity which sells a single piece of adult material. *See* Docket

No. 3. Yet, the exemption is integral to the definition and cannot be separately addressed. Accordingly, the Court addresses the overbreadth of the definition of "adult entertainment establishment" in its entirety, not in separate parts.

 

limitation. Therefore, plaintiffs have not established a substantial likelihood of success on the merits, and the motion for a preliminary injunction should be DENIED.

**B. Substantial Threat of Irreparable Injury**

■ To the extent that plaintiffs claim that their right to speech has been curtailed, plaintiffs have established a substantial threat of some irreparable injury. *See Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Yet, throughout their motion for a preliminary injunction, plaintiffs' principal claim is that the Adult Entertainment Code has put them out of business and cost them revenues. *See Docket No. 3, passim.* To the extent that plaintiffs complain of business interruption, plaintiffs have not established a substantial threat of irreparable injury. Orange County can repair that injury if plaintiffs prevail by cash damages.

**C. Balancing the Respective Injuries**

Both plaintiffs and Orange County face substantial injury to their respective interests by the issuance or denial of a preliminary injunction. Plaintiffs bear the burden of establishing that the threatened injury to plaintiffs outweighs the threatened injury to Orange County. *See Miller,* 115 F.3d at 905. Plaintiffs have not met their burden.

**D. The Public Interest**

■ The issuance of a preliminary injunction against all enforcement of Orange County's Adult Entertainment Code for facial invalidity would be a disservice to the public interest. Orange County would be unable to license adult entertainment businesses during the course of litigation and appeal. Plaintiffs have not met their burden of proving the contrary. *See Miller,* 115 F.3d at 905.

**V. Conclusion**

For the reasons set forth above, it is RECOMMENDED that the application for a preliminary injunction [Docket No. 2] be DENIED. Failure to file written objections to the proposed findings and recommendations in this report pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 6.02 within eleven days of the date of its filing shall bar an aggrieved party from a de novo determination by the district court of issues covered in the report, and shall bar an aggrieved party from attacking the factual findings on appeal.

Respectfully submitted this 29th day of August, 1997.