**BLUE MOON ENTERPRISES, INC., et al., Plaintiffs,**

v.

**PINELLAS COUNTY DEPARTMENT OF CONSUMER PROTECTION, In and For PINELLAS COUNTY, FLORIDA, Defendant.**

Nos. 8:96–CV–1492–T–26E, 8:97–CV–2149–T–23A, 8:98–CV–1429–T–24A.

United States District Court, M.D. Florida, Tampa Division.

May 10, 2000.

County Department of Consumer Protection, in and for Pinellas County, Florida, a political subdivision, defendants.

## *ORDER*

McCOUN, United States Magistrate Judge.

THIS MATTER is before the court on Plaintiffs' **Dispositive Motion for Summary Judgment** (Doc. 54) and Defendant's response in opposition (Doc. 64), and **Defendant's Memorandum of Law in Support of Defendants' Motion for Summary Judgment** (Doc. 68),[1] supplemental memorandum (Doc. 78), and Plaintiffs' response in opposition (Doc. 63).

### I.

The undisputed facts establish that consolidated Plaintiffs are Florida corporations which maintain offices, conduct business, and own or lease land in Pinellas County, Florida. Blue Moon, Inc., operates an adult bookstore called "Secrets of Largo"; 66 Street Video, Inc., operates an adult bookstore called "Pleasures," and Alexis, Inc., operates an adult bookstore and special cabaret called "Showgirls."

From July 24, 1990, through April 14, 1994, Pinellas County enacted ordinances which govern the licensing, operation, and regulation of businesses defined as adult use establishments such as those operated by Plaintiffs. The ordinances are codified at Article III of the Consumer Protection Articles of the Pinellas County Code (hereinafter "Code"). The Code requires such establishments to obtain adult use licenses, which can be suspended or revoked for violations of various prohibited activities enumerated in the Code. Additionally, the enforcement provision of the Code states that such violations may be prosecuted and punished as provided by Florida Statutes section 125.69 (1990).[2]

David Scott Boardman, Frank de la Grana, P.A., Luke Charles Lirot, Luke Charles Lirot, P.A., Tampa, FL, for Blue Moon Enterprises, Inc., a Florida corporation, plaintiffs.

Carl E. Brody, Jr., Pinellas County Attorney's Office, Clearwater, FL, Howard Mark Bernstein, Howard M. Bernstein, P.A., St. Petersburg, FL, for Pinellas

1. By its Notice of Filing (Doc. 61), the Defendant advised that it inadvertently neglected to file the actual Motion for Summary Judgment.

2. This section provides:

Plaintiffs operate their adult entertainment establishments under the appropriate adult use licenses pursuant to the Pinellas County Code (hereinafter "Code"). Between July 1996 and June 1998, Defendant sent notices to Plaintiffs advising that their adult use licenses would be suspended. The notice to Plaintiff Alexis, Inc., indicated that the suspensions were the result of three violations of Part VI of Chapter 42 of the Code. Plaintiffs Blue Moon Enterprises, Inc., and 66 Street Video, Inc., were notified that their license suspensions were the result of two violations of Part VI of Chapter 42 and one violation of a specified criminal act. None of the notices, however, contained specific descriptions of the alleged violations, nor were the Plaintiffs given prior notice of the pendency of any such alleged violations.

Plaintiffs bring their actions seeking declaratory judgment that Article III of the Code is unconstitutional, a preliminary and permanent injunction preventing enforcement of Article III of the Code, and reasonable attorney's fees and costs. Plaintiffs allege violations of the Florida and United States Constitutions, including violations of First Amendment guarantees of free expression, improper use of police power, unlawful taking of private property without just compensation, unbridled administrative discretion, violation of equal protection, and violation of due process. The parties have filed cross motions for summary judgment and their respective responses in opposition.

## II.

The court shall grant summary judgment for the moving party only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court may look to "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," in determining whether summary judgment is appropriate. Fed.R.Civ.P. 56(c). The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hairston v. Gainesville Sun Publ'g Co.,* 9 F.3d 913, 918 (11th Cir.1993).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Howard v. BP Oil Co.,* 32 F.3d 520, 524 (11th Cir.1994). The non-movant must designate specific facts showing a genuine issue for trial beyond mere allegations or the party's perception. *See Perkins v. School Bd. of Pinellas County,* 902 F.Supp. 1503 (M.D.Fla.1995). It must set forth, by affidavit or other appropriate means, specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e).

When deciding a motion for summary judgment, "[i]t is not part of the court's function ... to decide issues of material fact, but rather determine whether such issues exist to be tried ..." and "[t]he court must avoid weighing conflicting evidence or making credibility determinations." *Hairston,* 9 F.3d at 919 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The only determination for the court in a summary judgment proceeding is whether there exists genuine and material issues of fact to be tried. *See Hairston,* 9 F.3d at 921; *see also Little v. United Technologies, Carrier Transicold Div.,* 103 F.3d 956, 959 (11th Cir.1997). All the evidence

(1) Violations of county ordinances shall be prosecuted in the same manner as misdemeanors are prosecuted. Such violations shall be prosecuted in the name of the state in a court having jurisdiction of misdemeanors by the prosecuting attorney thereof and upon conviction shall be punished by a fine not to exceed $500 or by imprisonment in the county jail not to exceed 60 days or by both such fine and imprisonment.
Fla. Stat. ch. 125.69(1) (1990).

and inferences from the underlying facts must be viewed in the light most favorable to the nonmoving party. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir.1997).

### III.

■ As a threshold matter, it is well-settled law that erotic nonobscene printed matter, films, and live adult entertainment are expressive conduct under the First Amendment. *See City of Erie v. Pap's A.M.*, — U.S. —, —, 120 S.Ct. 1382, 1385, 146 L.Ed.2d 265 (2000); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); *Southeastern Promotions Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975); *Redner v. Dean*, 29 F.3d 1495, 1499 (11th Cir.1994); *TK's Video, Inc. v. Denton County, Tex.*, 24 F.3d 705 (5th Cir.1994). While such activity enjoys some degree of First Amendment protection, it can be regulated if the regulation furthers a substantial government interest and constitutes only an incidental limitation on the expressive activity *See United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968); *see also Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). To the extent that a licensing scheme makes the exercise of protected expression subject to obtaining governmental permission, it is deemed a prior restraint. *See Silver Spurs, Inc. v. Town of Palm Shores*, No. 96-637CI-VORL3ABF(18), 1997 WL 809203, at *3 (M.D.Fla. Dec.30, 1997) (citing *Near v. Minnesota*, 283 U.S. 697, 713, 51 S.Ct. 625, 75 L.Ed. 1357 (1931)). While prior restraints are not unconstitutional per se, a licensing scheme that places a prior restraint on the exercise of protected expression bears "a heavy presumption against its constitutional validity." *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (cit-

ing *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975)); *Florida Video Xpress, Inc. v. Orange County, Fla.*, 983 F.Supp. 1091, 1096 (M.D.Fla.1997).

■ For a licensing scheme to comport with the First Amendment, the ordinance must contain two procedural safeguards to ensure prompt decision-making: (1) licensing officials must be required to make prompt decisions, and (2) prompt judicial review of administrative decisions must be available. *See FW/PBS*, 493 U.S. at 228-30, 110 S.Ct. 596 (modifying the *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) (plurality opinion), standard to an adult business licensing scheme); *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358 (11th Cir. 1999), *cert. denied*, — U.S. —, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000).

■ As their first grounds for summary judgment, Plaintiffs argue that Section 42-62 of the Code fails to provide for prompt judicial review as required by *Freedman* and *FW/PBS*. Section 42-62 of the Code provides:

> Any decision of the department of consumer protection, the board of county commissioners or its departments made pursuant to this article may be immediately reviewed as a matter of right by petition for writ of common law certiorari to the Circuit Court for Pinellas County upon the filing of an appropriate pleading by an aggrieved party.

Pinellas County, Fla., Code § 42-62.

■ In this circuit, "prompt judicial review" requires only *access* to prompt judicial review for adult entertainment licensing decisions; it does not require a prompt, final judicial decision. *See Boss Capital, Inc. v. City of Casselberry*, 187 F.3d 1251 (11th Cir.1999), *cert. denied*, — U.S. —, 120 S.Ct. 1423, — L.Ed.2d — (2000).[3] In *Boss Capital*, the Eleventh

---

**3.** The court in *Boss Capital* discusses the split in the circuits. The First, Fifth, and Seventh

Circuits hold that "prompt judicial review" of licensing decisions requires only access to

Circuit acknowledged that *Freedman* and its progeny require a prompt, final judicial decision. *See id.* at 1256. However, the court distinguished *Boss Capital,* a case involving an adult entertainment licensing scheme, from *Freedman,* a case involving censorship, and found that "[t]he need for a prompt judicial decision is . . . less compelling for licensing ordinances than for censorship schemes." *Id.*

Section 42–62 of the Code is substantially similar to the provision for judicial review in the ordinance in question in *Boss Capital. See id.* at 1257–59. In light of the Eleventh Circuit's decision in *Boss Capital,* section 42–62 is an express provision for judicial review and satisfies the requirements of *FW/PBS.*[4]

Plaintiffs also challenge the provision in section 42–62 which specifies that an aggrieved party's remedy is to file a petition for writ of common law certiorari to the Circuit Court for Pinellas County. Section 26.012 of the Florida Statutes provides in pertinent part: "Circuit Courts shall have jurisdiction of appeals from final administrative orders of local government code enforcement boards." Fla. Stat. ch. 26.012(1); *see also* Fla. Const. art. V, § 5(b) (providing that circuit courts "shall have the power of direct review of administrative action prescribed by general law"). Contrary to Plaintiff's contentions, this court does not find that this provision of section 42–62 either limits access to

state courts or otherwise limits the jurisdiction of the federal courts to hear constitutional challenges to the Code. It merely states the available remedy under Florida law.

◼ The Plaintiffs also complain that the Code provides for a stay of the suspension only if the licensee files a petition for writ of certiorari to the Circuit Court for Pinellas County. The parties agree that section 42–85(c) does not stay the suspension where the aggrieved party seeks review in federal court. A mandatory stay is not necessarily required, however. "The availability of expeditious judicial review and the possibility of a temporary restraining order obviate the need for an automatic stay." *Grand Brittain, Inc. v. City of Amarillo, Tex.,* 27 F.3d 1068, 1071 (5th Cir.1994) (citing *National Socialist Party v. Village of Skokie,* 432 U.S. 43, 44, 97 S.Ct. 2205, 53 L.Ed.2d 96 (1977)); *see also TK's Video,* 24 F.3d at 708.[5] Here, no such stay has been sought.

## IV.

Plaintiffs also argue that provisions of the Code which list the multiple "local ordinance violations" upon which license suspension or revocation can be predicated are unconstitutionally vague, overbroad, manifest a denial of due process, have no scienter requirement, allows for criminal charges for failure to act where such act would otherwise be innocent conduct, and

---

prompt judicial review, while the Ninth and Fourth Circuits require a guarantee of prompt judicial resolution. *See Boss Capital,* 187 F.3d at 1255 (citations omitted). While this court favors the view adopted in the Ninth and Fourth Circuits for several reasons, it is bound by this decision.

4. That *Boss Capital* involves license denials rather than suspension and revocation of licenses does not alter the court's conclusion.

5. Although not raised in this suit, the prompt decision requirements would appear to apply to the decision by the director of the Department of Consumer Affairs on a hearing pursuant to § 42–85(c) and may invalidate the provision. As observed in *Grand Brittain,* it is likely in the case of an ongoing business that,

where the licensee has received a notice of suspension and has requested a hearing before the director of the Department of Consumer Protection, the county may not regulate the business (i.e., shut it down) until the decision of the director is final. During the pendency of the director's opinion, the status quo must be maintained. Since the provisions allowing for such a hearing do not require a decision to be made within any specific period of time, the director could not set idly by and allow the thirty-five-day grace period to expire, resulting in the suspension taking effect, without running afoul of the requirements in *FW/PBS. See Grand Brittain,* 27 F.3d at 1071.

subjects potential offenders to double jeopardy. Specifically, Plaintiffs challenge the provisions of sections 42–107 and 42–139.

### A.

Division 4 of the Code sets forth general operation requirements for all establishments governed by the Code. Section 42–107 establishes special requirements to be observed by adult theaters in particular. Defendant urges that Plaintiffs lack standing to challenge this provision and argues that, at any rate, Section 42–107 validly limits unprotected conduct.

█ As a preliminary matter, the court finds that Plaintiffs clearly possess standing to challenge this provision. Although the traditional rule is that "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court," facial challenges based on overbreadth are allowed "even though the conduct of the person making the attack is clearly unprotected and could be proscribed by a law drawn with the requisite specificity." *New York v. Ferber,* 458 U.S. 747, 767, 769, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (citations omitted); *see also Members of the City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 798–99, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984). This exception to traditional standing requirements applies in the First Amendment context "because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 392–93, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988); *see also Forsyth County, Ga. v. National-*

*ist Movement,* 505 U.S. 123, 129, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992).

Under such relaxed standing requirements, even if the application of section 42–107 is unobjectionable in this instance, Plaintiffs have standing to bring a facial challenge to the statute. At any rate, while Plaintiff Blue Moon, Inc., describes itself as an "adult bookstore" as defined in the Code, *see* (Doc. 1 at ¶ 6), it is licensed to operate as a special cabaret, adult bookstore, and adult theater. *See* (Doc. 1, Exhibit B). As a license holder subject to requirements governing adult theaters, Plaintiff's conduct could be restricted or chilled by the provisions of section 42–107. Thus Plaintiffs have suffered an "actual or threatened injury" as a result of the putatively illegal conduct of the defendant, and Plaintiffs possess standing to raise this challenge to those provisions, both facially and as applied.[6]

### B.

█ The provisions of Section 42–107 impose considerable additional requirements on the licensees of adult theaters that are not imposed on other establishments. Of particular concern to the Plaintiff is the requirement that each such establishment have one or more manager's stations of a specified maximum size from which there must be an unobstructed view of every area of the premises to which any patron is permitted access except restrooms. *See* Pinellas County, Fla., Code § 42–107(d), (e). Alternatively, the licensee may choose to use video cameras for surveillance of patrons. *See id.* at § 42–107(g).

Plaintiffs object to Section 42–107(1)(f) of the Code on grounds of vagueness and overbreadth. This provision states:

It is the duty of the licensee, the owners, and the operator of the premises to en-

<hr>

6. The court agrees with Defendants that Plaintiffs lack standing to assert the vicarious First Amendment associational rights of patrons or privacy rights of patrons under the Florida Constitution. *See Paris Adult Theatre*

*I v. Slaton,* 413 U.S. 49, 65, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973); *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

sure that at least one employee is on duty and situated in each manager's station at all times that any patron is present inside the premises and that the employee is continually monitoring the activities in the adult theater for violations of the provisions of this article and of state law.

Pinellas County, Fla., Code § 42–107(1)(f). Specifically, Plaintiffs contend that the terms "continually" and "monitor" as used in section 42–107(1)(f) are unconstitutionally vague and overbroad. Neither term is defined within the Code itself. *See* Pinellas County, Fla., Code § 42–51. Contrary to Plaintiffs' contentions, however, a person of ordinary intelligence may understand what conduct is proscribed by the ordinance.

■■■ "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Laws must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited so that he may act accordingly." *Id.* at 108–09, 92 S.Ct. 2294; *see also City of Chicago v. Morales,* 527 U.S. 41, 56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999). "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). To succeed on a vagueness challenge, the complainant must demonstrate that the law is impermissibly vague in all of its applications. *See Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494–95, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). Here, vagueness of the Code raises special First Amendment concerns because of its chilling effect on free speech. *See Reno v. American Civil Liberties Union,* 521 U.S. 844, 871–72, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997); *see also United States v. Acheson,* 195 F.3d 645, 652 (11th Cir.1999).

The court finds no vagueness in the word, "monitor." The term, "continually," possesses more than one dictionary definition. The Oxford English Dictionary defines "continually" as

1. In a continual way: always, incessantly, constantly, perpetually, all the time; *i.e.* either: Without any intermission, at every moment, continuously (in time); or less strictly: With frequent repetition, very frequently.

Oxford English Dictionary 826 (2d ed.1989). Webster's Third International Dictionary defines it as follows:

1: in a continual way: UNCEASINGLY. 2: continuously in time: without intermission. 3: in regular or repeated succession: very often.

Webster's Third Int'l Dictionary of the Eng. Language Unabridged 493 (1993). However, the context of the term indicates that the preferred definition is applicable here. Clearly, the phrase, "continually monitor," as used in the Code places a duty on an owner of an adult theater to have an employee monitoring the activities of patrons at all times. Neither "monitor" nor "continually" is unclear or vague.

■■■ Plaintiffs also challenge Section 42–107(1)(f) for overbreadth. Overbreadth "results when lawmakers define the scope of a statute to reach both unprotected expression as well as, at least potentially, protected speech." *American Booksellers v. Webb,* 919 F.2d 1493, 1502 (11th Cir.1990). The overbreadth doctrine "protects the public from the chilling effect that ... a statute has on protected speech." *Nationalist Movement v. City of Cumming, Forsyth County, Ga.,* 934 F.2d 1482, 1485 (11th Cir.1991), *quoted in Acheson,* 195 F.3d at 650; *see also American Booksellers Ass'n,* 484 U.S. at 392–93, 108 S.Ct. 636; *Grayned,* 408 U.S. at 114–15, 92 S.Ct. 2294. The court should employ the doctrine sparingly and only where the court finds the overbreadth of a statute "not only ... real, but substantial as well, judged in relation to the statute's plainly

legitimate sweep." *Broadrick,* 413 U.S. at 613, 615, 93 S.Ct. 2908, *quoted in Acheson,* 195 F.3d at 650; *see also Florida Video Xpress,* 983 F.Supp. at 1096 (citing *Daniel v. City of Tampa,* 38 F.3d 546, 551 n. 10 (11th Cir.1994)). While the overbreadth doctrine "in effect requires courts to evaluate the *potential* reach of a statute, *conceivable* sets of circumstances, and *possible* direct and indirect burdens on speech," *American Booksellers,* 919 F.2d at 1499–1500 (emphasis in original), a statute should not be found invalid "because it is possible to conceive of a single impermissible application." *New York v. Ferber,* 458 U.S. 747, 772, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (quoting *Broadrick,* 413 U.S. at 630, 93 S.Ct. 2908 (Brennan, J., dissenting)). The court should not find a statute facially overbroad where the statute is "readily susceptible" to a narrowing construction that would make it constitutional. *See American Booksellers Ass'n,* 484 U.S. at 397, 108 S.Ct. 636; *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908.

■ Here, Plaintiffs argue that section 42–107(1)(f) is overbroad because it may be applied to conduct that is protected and noncriminal in nature. The court agrees that section 42–107(1)(f) places an unreasonable and onerous duty on licensees, owners, operators, and, by definition, employees of adult theaters. Under this provision, all must ensure the presence of at least one employee on duty and situated in each manager's station at all times that a patron is present in the theater and continually monitoring the activities of patrons for violations of the ordinance and of state

law. Thus, the ordinance requires adult theaters to monitor not only unlawful activity, but *all* activities of patrons within the theater. Such a requirement places a substantial burden on adult theater owners, operators, and employees to monitor all activity, including activity that is legal and constitutionally protected. Such direct monitoring of theater patrons creates a risk of chilling protected speech for it can hardly be doubted that patron viewers of adult movies will experience the imposition of constant surveillance. Such a chilling effect is substantial in relation to the provision's purpose in controlling harmful, constitutionally unprotected conduct.[7] Further, its requirements extend well beyond those necessary to further the government's interest in discouraging illegal or potentially harmful conduct.

■ Under the four-part test enunciated in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), the government may constitutionally regulate expressive conduct if: (1) the regulation of expressive conduct is within the government's constitutional power; (2) the regulation furthers an important or substantial governmental interest; (3) the interest served is unrelated to the suppression of free expression; and (4) the incidental restriction on protected expression is no greater than is essential to the furtherance of that interest. *See id.* at 376–77, 88 S.Ct. 1673; *Barnes,* 501 U.S. at 567–68, 111 S.Ct. 2456; *Sammy's of Mobile, Ltd. v. City of Mobile,* 140 F.3d 993, 996 (11th Cir.1998).[8] Here, an oper-

---

7. Section 42–107(1)(g) allows for continual video surveillance as an alternative to the monitoring requirements of section 42–107(1)(f). Nonetheless, the ordinance sweeps broadly to reach conduct that is noncriminal in nature and thus risks chilling protected speech.

8. The court applies the *O'Brien* standard where, as is undisputed here, the governmental purpose in enacting the regulation is unrelated to the suppression of expression. Only if the government interest is related to the content of the expression does the regulation

fall outside the scope of the *O'Brien* test and must be justified under a more stringent standard. *See Pap's,* —— U.S. at ——, 120 S.Ct. at 1385; *Texas v. Johnson,* 491 U.S. 397, 403, 109 S.Ct. 2533, ·105 L.Ed.2d 342 (1989). Plaintiffs concede that the control of sexually transmitted diseases, the control of criminal behavior, and enforcement of applicable safety and building codes are valid governmental concerns. *See* (Doc. 55 at 10). However, they argue that this provision is not a legitimate, least restrictive means to achieve these interests.

ator or employee is subjected to more than an incidental restriction on the conduct of such adult establishment. While the chilling effect on the establishment's business is obvious, there appears no countervailing substantial governmental interest in requiring continuous monitoring of lawful as well as illicit conduct by patrons.

Under this regulatory scheme, the failure to continuously monitor even innocent conduct can result in punishment, including imprisonment. The failure to comply with these monitoring requirements constitutes a prohibited operation, *see* Pinellas County, Fla., Code § 42–138, and may result in suspension or revocation of the license and a fine and/or imprisonment of the business entity, licensee, operator, or employee. *See* Pinellas County, Fla., Code §§ 42–85(b), 42–86(b), 42–60(c). Additionally, the provision subjects adult theater owners, operators, and employees to punitive measures including incarceration even though they have no responsible relationship to a patron's lawful or illegal conduct. While these provisions require monitoring of entirely innocent and lawful conduct by the patrons, the ordinance does not require adult theater licensees or employees to report or otherwise intervene in patrons' activities which may violate the ordinance or state law. In this regard, section 42–107 fails to further the government's interest in combating the secondary effects of the adult entertainment industry and fails to satisfy the third prong of the *O'Brien* test. In any event, this is no incidental restriction on the businesses' or the viewers' rights. It sweeps far beyond what is essential to further the government's interest in curtailing illicit activity that may occur in adult theaters and impermissibly impinges on protected speech in contravention of the fourth prong of the *O'Brien* test. For these reasons, the pro-

visions of § 42–107(d), (e), (f), and (g)[9] governing adult theaters are unconstitutional.

### C.

Plaintiffs also urge that many terms in section 42–139, including but not limited to "simulated" and "or with reason to know," are ambiguous and unconstitutionally vague. Upon consideration, the court does not find the material terms of this provision unconstitutionally vague. *See, e.g., Farkas v. Miller*, 151 F.3d 900, 905–06 (8th Cir.1998); *Dodger's Bar & Grill, Inc. v. Johnson County Bd. of County Comm'rs*, 32 F.3d 1436, 1444 (10th Cir.1994).

### D.

Division 6 of Code lists miscellaneous prohibitions, including failure to comply with general and specific operational requirements of adult use establishments, prohibited acts of employees and patrons and for allowing employees to engage in prohibited acts. Violations of any provisions of Division 6 serve as predicate offenses for the suspension and revocation of licenses issued pursuant to the ordinances. *See* Pinellas County, Fla., Code §§ 42–85(b), 42–86(b). Additionally, under the enforcement provisions of the article, section 42–60(c) authorizes prosecution and punishment for violations of Division 6 of the ordinance in accordance with section 125.69 of the Florida Statutes (1990). Florida Statutes section 125.69(1) provides:

> Violations of county ordinances shall be prosecuted in the same manner as misdemeanors are prosecuted. Such violations shall be prosecuted in the name of the state in a court having jurisdiction of misdemeanors by the prosecuting attorney thereof and upon conviction shall be punished by a fine not to exceed $500 or by imprisonment in the county jail not to

9. An ordinance requiring video surveillance may arguably provide a less intrusive means of furthering legitimate government interests. Here, however, the alternative of video surveillance is no less onerous and still requires

the business to maintain the manager's station and to monitor protected and unprotected activities. *See* Pinellas County, Fla., Code § 42–107(g)(3).

exceed 60 days or by both such fine and imprisonment.

Fla. Stat. ch. 125.69(1) (1990).

Plaintiffs expressly complain of section 139, which enumerates violations by business entities, licensees, operators, and, by definition, employees, for knowingly, or with reason to know, allowing employees to engage in certain conduct. While these licensees have not themselves been prosecuted for violations of this section, their employees have, and in part, these violations form the basis of the license suspensions.[10] They complain that it criminalizes otherwise noncriminal conduct and imposes vicarious criminal liability on persons without requiring scienter or other culpable relationship.

In *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358 (11th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000), the Eleventh Circuit recognized the application of respondeat superior liability in the context of "public welfare" crimes. Such "crimes" are "not crimes in the traditional sense; instead, they are a means of regulating activities that pose a special risk to the public health or safety." *Id.* at 1367. The court further recognized that the imputation of such liability is limited to circumstances where the defendant has a "responsible relation" to such unlawful conduct or omission, that is, where defendant "has the power to prevent violations from occurring." *Id.* at 1367 (citing *United States v. Park*, 421 U.S. 658, 670–73, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975)). However, criminal liability based on respondeat superior is inappropriate for offenses for which the penalty involves imprisonment. *See id.* at 1367.

Plaintiffs contend that section 42–139 violates this basic principle of due process by imputing criminal liability for the acts of other persons. Section 42–139 makes it a violation of the ordinance for any business entity, licensee, or operator, and by definition, any employee of an adult use establishment to allow employees to engage in specified prohibited acts. *See* Pinellas County, Fla., Code § 42–139, 42–144. Thus any employee may be held vicariously liable for knowingly, or with reason to know, permitting, suffering, or allowing any employee to engage is specifically prohibited acts. The provision contains no caveat requiring the acts to be committed within the employee's scope of authority under the licensee or operator or other demonstration of a responsible relation to the acts; the ordinance simply imputes liability for the allowance of prohibited acts of employees.

As discussed *supra*, section 42–138 also imputes liability for violations of general and specific operational requirements to any business entity, licensee, operator, or employee. While the entity or licensee may bear some responsibility for complying with the operational requirements, the act also holds operators and employees vicariously liable for such violations even though there is no requirement that either would have the power to prevent violations from occurring or that they even know of or be aware of the violation.

Moreover, the ordinance defines "employee" and "operator" broadly:

> and 42–86. In one state proceeding, the prosecutor stated candidly that "the big goal is against the licenses and the operation of the establishments themselves, not particularly the people who work in there." *State v. Zino*, Case No. 98–25607MOANO, Local Ordinance Violation Division of the Pinellas County Court, Sixth Judicial Circuit in and for Pinellas County, Florida (transcript of proceedings, Apr. 30, 1999) (Doc. 74, Exhibit B at 4); *see also* (Doc. 74, Exhibit A at 3–4).

**10.** The Defendant's method of enforcing the Code's license suspension and revocation provisions also reveals these Defendants' standing on this issue. Records from state proceedings reflect that the county aggressively charges adult use establishment employees with ordinance violations but seeks only minimal punishment after agreeing to withhold adjudication if they plead no contest to the charges. The court's findings of guilt, even though adjudication is withheld, counts as a "conviction" for purposes of sections 42–85

*Employee* means a person who works or performs or provides services in connection with an adult use establishment, irrespective of whether such person is paid a salary or wage or is an independent contractor, provided such person has a substantial or consistent relationship with the business of or entertainment/services provided by the adult use. "Employee" includes, but is not limited to, performers, managers and assistant managers, stockpersons, tellers, and operators....

*Operator* means any person or business entity who engages in or performs any activity which is necessary to or which facilitates the operation of an adult entertainment establishment, including but not limited to, the licensee, manager, owner, doorman, bartender, disc jockey, sales clerk, ticket taker, movie projectionist, performer, employee, or supervisor. This term is not meant to include repairmen, janitorial personnel or the like who are only indirectly involved in facilitating the operation of the adult use.

Pinellas County, Fla., Code § 42–51 (emphasis in original). Thus sections 42–138 and 42–139 apply not only to the business entity or licensee who may arguably bear a responsible relation to the prohibited conduct, but given the expansive definitions of "operator" and "employee," the section also imputes liability for the violations of employees to all other employees, regardless of their authority or power to prevent such activity. *See Lady J. Lingerie,* 176 F.3d at 1367.

As noted, a violation of sections 42–138 and 42–139 may be penalized with imprisonment under Florida Statute section 125.69 (1990). *See* Pinellas County, Fla., Code § 42–60. Such a scheme goes too far. "Due process prohibits the state from imprisoning a person without proof of some form of personal blameworthiness more than a 'responsible relation.'" *Lady J. Lingerie,* 176 F.3d at 1367. As discussed *supra,* sections 42–138 and 42–139 lack such a requirement of personal blameworthiness, and Division 6 of the ordinance is unconstitutional to the extent that these sections provide for a penalty of imprisonment for such public welfare crimes. Since the imprisonment provision is an inextricable part of the punishment scheme in this ordinance, the entirety of sections 42–138 and 42–139 are unconstitutional.

E.

Plaintiffs also contend that the suspension and revocation provisions of the Code subject license holders to double jeopardy because the same conduct constituting Code violations can result in a criminal charge and serve as a predicate to license suspension or revocation.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides in relevant part: "Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *see also Benton v. Maryland,* 395 U.S. 784, 794–95, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). "[T]he Double Jeopardy Clause does not prohibit the imposition of any additional sanction that could, in common parlance, be described as punishment. The Clause protects only against the imposition of multiple criminal punishments for the same offense, ... and then only when such occurs in successive proceedings." *Hudson v. United States,* 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997) (citations omitted). Under *Hudson,* the court must first determine whether the legislature indicated, either expressly or implicitly, the preference for a label of civil or criminal in establishing the penalizing mechanism. *See id.* Even where the legislature indicated an intention to establish a civil penalty, the court must then inquire whether the penalty is so punitive in purpose or effect to transform the remedy into a criminal penalty. *See id.* (quoting *Rex Trailer Co. v. United States,* 350 U.S. 148, 154, 76 S.Ct. 219, 100 L.Ed. 149 (1956)).

■ The Code here states that the purpose of the licensing procedure is to "place a[n] ... incentive on the owner/operator to see that the adult use establishment is run in a manner that is consistent with the health, safety and welfare of its patrons and employees as well as the citizens of the county." *See* Pinellas County, Fla., Code § 42–57(e). There is no express provision or implicit suggestion that the practice of counting Code violations as predicate offenses for license suspension and/or revocation constitutes a criminal punishment.

■ In considering whether this practice is so punitive in either purpose or effect as to effectively constitute a criminal penalty, the court must consider several factors in relation to the statute on its face: (1) whether the sanction involves an affirmative disability or restraint, (2) whether it has historically been regarded as punishment, (3) whether it is assessed only upon a finding of scienter, (4) whether its operation promotes the traditional aims of punishment, retribution and deterrence, (5) whether the behavior to which it applies is already a crime, (6) whether there is a remedial purpose behind the legislation, and (7) whether the legislation appears excessive in relation to the remedial purpose. *See Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963); *see also Grossfeld v. Commodity Futures Trading Comm'n,* 137 F.3d 1300, 1303 (11th Cir.1998); *Cole v. United States Dep't of Agric.,* 133 F.3d 803, 806 (11th Cir.1998). " '[O]nly the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson,* 522 U.S. at 99, 118 S.Ct. 488 (quoting *United States v. Ward,* 448 U.S. 242, 249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)).; *see also Grossfeld,* 137 F.3d at 1304.

Suspension or revocation of licenses does not involve an "affirmative restraint" such as imprisonment and is not historically regarded as a criminal punishment. *See Harper v. Lindsay,* 616 F.2d 849, 858 (5th Cir.1980). The ordinance at section 42–139 prohibits any business entity, licensee, or operator to "knowingly, or with reason to know, permit, suffer, or allow" any employee to engage in prohibited acts, and thus it does contain a scienter requirement, albeit one that allows for broad interpretation. As to the fourth factor, the licensing provisions serve as a deterrence to ordinance violations, but the Supreme Court has recognized that all civil penalties will have some deterrent effect. *See Hudson,* 522 U.S. at 102, 118 S.Ct. 488. With respect to the fifth factor, the ordinance violations are criminal in nature.[11]

As to the final two factors, the licensing provisions are intended to enforce other provisions of the ordinance and to deter criminal conduct. The court is troubled by the fact that evidence proffered by the Defendants suggests an ulterior motive on the part of the county to harass these adult businesses, a purpose which ultimately equates with censorship. *See supra* at 1147 n. 11. Nevertheless, the court must conclude that there is a remedial purpose behind the legislation. As noted above, insofar as the punishment under the ordinance may include imprisonment, it is, in some circumstances excessive.

Although the court finds that the county's actions and the seventh factor weighs heavily against a finding that the license suspension and revocation provisions are not punitive in nature, no one factor is determinative. *See Hudson,* 522 U.S. at 101, 118 S.Ct. 488. Most of the *Kennedy* factors suggest otherwise, and Plaintiffs have not presented the "clearest proof" that license suspension and revocation rise to the level of criminal punishment in this

---

**11.** Although Defendant asserts in its opposition to Plaintiff's motion for summary judgment that ordinance violations are not criminal violations, Defendant concedes in its memorandum in support of summary judgment that violations of Division 6 are criminal in nature. *See* (Doc. 68 at 30).

instance. Therefore, the court does not find that the Code's enforcement provisions violate the Fifth Amendment's Double Jeopardy Clause. *Cf. Zukas v. Hinson,* 124 F.3d 1407 (11th Cir.1997) (FAA revocation of Petitioner's pilot certificate following his drug conviction did not violate Double Jeopardy Clause), *cited in Hudson,* 522 U.S. at 98 n. 4, 118 S.Ct. 488; *Rivera v. Pugh,* 194 F.3d 1064 (9th Cir. 1999) (Petitioner's prosecution for refusal to take chemical breath test after revocation of driver's license for same refusal did not violate Double Jeopardy Clause); *Vercillo v. Commodity Futures Trading Comm'n,* 147 F.3d 548 (7th Cir.1998) (permanent trading ban and revocation of trading license of a commodities trader who had been convicted of crimes related to illicit trading did not violate Double Jeopardy Clause).

### IV.

Having duly considered the arguments of the parties, the court concludes that all other challenges raised by Plaintiffs are without merit and warrant no discussion from the court.

### V.

Accordingly, it is **ORDERED** that **Plaintiffs' Dispositive Motion for Summary Judgment** (Doc. 54) is **GRANTED in part** as set out herein. Sections 42–107(d), (e), (f), and (g) and sections 42–138 and 42–139 in conjunction with section 42–60(c) are declared unconstitutional, and the Defendant is permanently enjoined from enforcement of these sections. To the extent not granted herein, the motion is **DENIED.** Further ruling on **Defendant's Memorandum of Law in Support of Defendants' Motion for Summary Judgment** (Doc. 68) is unnecessary. *See* 28 U.S.C. § 2201; *see also Wilton v. Seven Falls Co.,* 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *McCullagh v. Dean Witter Reynolds, Inc.,* 177 F.3d 1307, 1307 (11th Cir.1999); *Old Republic*

*Union Ins. Co. v. Tillis Trucking Co.,* 124 F.3d 1258, 1260 (11th Cir.1997).

The Clerk is directed to enter judgment favor of the Plaintiffs directing that the Defendant is enjoined from enforcement of sections 42–107(d), (e), (f), and (g) and sections 42–138 and 42–139. The court reserves jurisdiction over the matter of fees and costs.